

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 17, 2008

**BY HAND**

The Honorable Robert P. Patterson
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York  10007

        Re:    <u>United States v. Daniel B. Karron,</u>
                   S2 07 Cr. 541 (RPP)

Dear Judge Patterson:

       The Government respectfully submits this letter in response to the defendant's sentencing letter, dated October 13, 2008. In her letter, Dr. Karron argues that the Government suffered no actual loss from her misappropriation of the ATP grant funds, and as a result, the correct offense level for her conduct under the Sentencing Guidelines is level six. The defendant raised this same argument unsuccessfully with the Probation Department in her letter, dated September 23, 2008, in which Dr. Karron set forth her objections to the Presentence Investigation Report ("Presentence Report" or "PSR"). As discussed below, the Government's loss calculation, which was adopted by the Probation Department in the Presentence Report, gives the defendant every benefit of the doubt and accurately reflects the loss suffered by the Government. The defendant's arguments to the contrary are meritless and should be rejected.

DISCUSSION

    A.    **The Court Should Accept The Government's Loss Calculation And Reject The Defendant's Assertion That There Was No Loss**

       The Government's loss calculation is based on GX 114 and 115,[1] which contain side-by-side comparisons of CASI's budgeted expenses under the final approved budget, versus its actual expenses for Year One (GX 114) and Year Two (GX 115) of the ATP grant. These exhibits are, in turn, based on the detailed analysis of CASI's financial records conducted by

---

[1] "GX refers to the Government's exhibits at trial. GX 114 and GX 115 are attached to this letter as Exhibits A and B, respectively.

The Honorable Robert P. Patterson
October 17, 2008

Belinda Riley. *See* GX 110-111. As GX 114 and GX 115 make clear, Dr. Karron spent a considerable portion of the ATP funds that CASI received on categories of expenses that were not contained in the approved budget (*e.g.*, rent, utilities, cleaning, meals), and also went significantly over budget on categories of items that were contained in the approved budget (e.g., equipment, salary, fringe benefits). Those expenses, which are represented by the red section of the pie chart in the upper right-hand corner of GX 114 and GX 115, were unapproved expenses incurred in violation of the ATP spending rules, and as such, constitute an actual loss to the Government of $465,142.[2]

   The same Guidelines commentary cited by the defendant in support of her argument that the Government suffered no loss, in fact supports the Government's loss calculation. The Guidelines state that "[i]n a case involving government benefits (*e.g.*, grants, loans, entitlement program payments), loss shall be considered to be not less than the value of the benefits obtained by unintended recipients *or diverted to unintended uses*." U.S.S.G. § 2B1.1. comment. (n.3(F)(ii)) (emphasis added). The ATP funds awarded to CASI were governed by strict spending and budgetary requirements that dictated exactly what a grant recipient could and could not do with the grant money. As Hope Snowden and Bettijoyce Lide testified, ATP grant recipients were told that they must adhere to their budgets, and that spending ATP funds outside of the approved budget, with the one exception of reallocating 10% or less of the annual budgeted funds between approved budget categories, was prohibited unless the recipient received prior approval from NIST. (Tr. 94-97, 265-68). These rules were clear and were designed to ensure that the ATP grant money was not misspent on inappropriate items or wasted on unnecessary disbursements. Hence, any expenditures that did not adhere to these rules – *i.e.*, those reflected in the red portions of the pie charts in GX 114 and GX 115 – were unintended uses for the ATP grant money and resulted in a loss to the Government.

   It is immaterial that some of Dr. Karron's improper expenditures may have arguably benefitted her research in some way. Indeed, the defendant's entire argument that the Government suffered no loss is premised on the notion that as long as the expenditure aided the research, however minimally and however tangentially, the Government cannot claim it as a loss. That argument overreaches to the point that it borders on the absurd. Under this logic, the $60,000 in rent expenses for Year One of the grant could not be considered a loss to the Government because the rent allowed CASI to have office space without which its employees could not have worked as effectively. Similarly, the $16,341 in utilities expenses for Year One of the grant would not be a loss because the electricity was necessary to run the computers that were at the core of the defendant's research. Yet the defendant would be hard pressed to find two more clearly improper expenditures than rent and utilities, which Dr. Karron was specifically told were unallowable expenses under the ATP grant rules. This flaw in the defendant's reasoning is evident when she weakly asserts that her cleaning expenses should not be counted as

---

  [2] The actual loss in Year One of the grant was $268,638. *See* GX 114 (bottom right pie chart). The actual loss for Year Two of the grant was $196,504. *See* GX 115 (bottom right pie chart). Adding the two losses together yields a total loss of $465,142.

The Honorable Robert P. Patterson
October 17, 2008

a loss because "clean up was a necessary expense in light of the equipment that was being used on the project." Def. Ltr. at 3. Hence, the defendant's position that any expense that even remotely benefits the research should not be counted in the loss calculation, regardless of whether it was a budgeted expense or otherwise properly incurred under the ATP grant rules, is clearly unworkable. Moreover, it conflicts with the trial testimony, which established that "intended use" of the ATP grant money was that it should be spent on budgeted items.

Furthermore, the Government's loss calculation is a fair assessment of the loss because it gives the defendant every benefit of the doubt with respect to expenditures that were within budget. That is, the Government's calculation assumes that every dollar spent on items in an approved budget category up to the budgeted amount for that year was spent on an allowable research-related expense. The Government includes in the loss amount only those expenditures that were over-budget or for items in non-budgeted categories. The Government submits that this is an accurate assessment of the Government's actual loss in this case and represents an appropriate resolution to the issue of loss amount.[3]

### B.   The Defendant's Remaining Arguments Are Meritless

The defendant makes a number of additional arguments in her sentencing letter regarding loss amount, which the Court should reject as meritless. First, the defendant asserts that the loss amount should be offset by (1) "the money that she returned," (2) "the cost of the repossessed government equipment," and (3) "the value of her services rendered." Def. Ltr. at 2.

With respect to the first claim, Dr. Karron argues that she should receive credit for depositing $70,000 of her own money in CASI's accounts after the grant was suspended on June 27, 2003. However, as the defendant points out, she is only entitled to this credit if she returned the money "before the offense was detected," which is determined from either "the time the offense was discovered by a victim or government agency," or "the time the defendant knew or reasonably should have known that the offense was detected or about to be detected by a victim or government agency." U.S.S.G. § 2B1.1, comment. (n.3(3)(E)(I)). It cannot credibly be argued that the defendant's offense was not discovered, at a minimum, by the date of the suspension of the grant on June 27, 2003. Contrary to the defendant's assertion, the trial testimony established that NIST officials had discovered far more than just a cost-sharing violation by that date. Hope Snowden testified that in the budget revisions submitted by CASI at the end of 2002 and the beginning of 2003 she noticed serious discrepancies in CASI's budget numbers that raised a "red

---

[3] The defendant argues that the Government's calculation does not take into account that she was authorized to reallocate 10% of the annual budget within approved budgeted categories. Def Ltr. at 3. GX 114 and GX 115 each break out an amount equal to 10% of the annual budget from the rest of the loss amount. For Year One, that amount is 83,650. *See* GX 114 (small red pie slice in the lower right-hand pie chart). For Year Two, it is 50,487.50. *See* GX 115 (same). Assuming, *arguendo*, that this 10% should be removed from the loss amount, the total loss amount becomes $331,005, which would decrease the defendant's total offense level from 20 to 18.

3

The Honorable Robert P. Patterson
October 17, 2008

flag," which indicated to her that there were "some issues of appropriations of these funds." (Tr. 314-20). These discrepancies ultimately led her and her co-workers to call the Office of the Inspector General to request an audit. (Tr. 320). Hence, NIST had discovered the defendant's violation several months before the suspension date, and the defendant should not get credit for any deposits she may have made into the CASI accounts after June 27, 2003.

With respect to the second claim, it is simply frivolous for the defendant to argue that she can spend thousands of dollars of grant money on equipment purchases, which the Government did not approve and has absolutely no use for, and then claim that the equipment cannot be included in the loss amount because the Government now owns it.[4] With respect to the third claim, there is no evidence in the record that the Government received any benefit whatsoever from the defendant's research. The email from Dr. Gabor T. Herman, which the defendant attaches to his submission, comes from someone who had no connection at all to Dr. Karron's research. His opinion, which is based on nothing more than his review of documents, and reflects no personal experience with the research, should be given no weight by the court.

Dr. Karron also argues that the $75,000 salary advance that she gave herself in Year One of the grant should count as a credit because she repaid the money by declining to take part of her salary. As the Government has explained many times in many different submissions, Dr. Karron took out of CASI far more than she put into it. That includes her foregone salary payments, which Belinda Riley took into account in her analysis. *See* GX 110-111. Accordingly, Dr. Karron is not entitled to this credit.

Finally, Dr. Karron asserts that the $75,217 she spent on "subscriptions" is actually contained in the budget in the category "Other." Def. Ltr. at 3. This is a transparent attempt to shoehorn non-budgeted items into a budgeted category with no basis whatsoever. The budget document clearly states that the grant recipient must set forth "a detailed description of any other direct costs" that he or she wishes to include in this section for it to be covered under the budget. GX 22. The only expense listed in CASI's last approved budget for "Other" was for audit expenses. GX 22. Subscriptions do not count and therefore should be included in the loss amount.

---

[4] Furthermore, under the ATP rules, if the value of a piece of equipment falls below $5,000, the grant recipient is allowed to keep it (Tr. 95-96), which raises the possibility that the defendant bought the equipment with the intention of keeping it for herself after the grant was over.

The Honorable Robert P. Patterson
October 17, 2008

## CONCLUSION

Based on the foregoing, the Government respectfully requests the Court to adopt the findings in the Presentence Report concerning loss amount and sentence the defendant to a term of imprisonment within the applicable Guidelines range.

                              Respectfully submitted,

                              MICHAEL J. GARCIA
                              United States Attorney

                      By: _____/s/_____
                              Chi T. Steve Kwok / Christian R. Everdell
                              Assistant United States Attorneys
                              (212) 637-2415 / 2556

cc:     Ronald Rubinstein, Esq.  (by hand).