# Mintz & Oppenheim LLP
260 Madison Avenue, 18th Fl.
New York, New York 10016

| | |
|---|---|
| Marshall A. Mintz | Tel (212) 447-1800 |
| Laura A. Oppenheim | Fax (212) 448-0066 |

December 30, 2008

**BY ECF & FACSIMILE**

The Honorable Robert P. Patterson
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

        Re:  *United States v. Daniel Karron*,
           07 Cr 541 (RPP)

   This letter is submitted on behalf of defendant Daniel Karron, whom my office represents on appeal in the above-referenced matter.  On October 27, 2008, Dr. Karron was sentenced 7½ months' incarceration and a timely Notice of Appeal was filed.  Her self surrender date is currently set for January 10, 2009.  For the reasons set forth below, it is respectfully submitted that Dr. Karron should be permitted to remain free on bail pending the outcome of her appeal in the Second Circuit Court of Appeals.

   As an initial matter, counsel apologizes to the Court for any inconvenience caused by making the application at this time.  This firm was retained less than two weeks ago and needed to review the trial record prior to making this request – which we did as quickly as possible given the intervening holiday.  However, given the impending self-surrender date, it is respectfully requested that the Court grant Dr. Karron a reasonable extension of that date if necessary to allow for a decision on this application.  Upon information and belief, the government opposes both the application for bail and any accompanying request to adjourn the self-surrender date.

*Statute of Conviction*

   The defendant was convicted after jury trial of violating 18 U.S.C. § 666(a)(1), based upon her misappropriation of federal grant funds awarded to her company CASI by the Advanced Technology Program ("ATP") and administered by the National Institute of Standards and Technology ("NIST").  That statutes provides, in relevant part, that:

     (a)  Whoever, if the circumstance described in subsection (b) of
        this section exist –

Mintz & Oppenheim LLP

Hon. Robert P. Patterson
United Stated District Judge
December 30, 2008
Page 2 of 8

>   (1)   being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof –
>
>   (A)   embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than    the rightful owner or **intentionally misapplies**, property that –
>
>   (i) is valued at $5,000 or more, and
>
>   (ii)  is owned by, or is under the care, custody, or control of such organization, government, or agency;
>
>   \* \* \*
>
>   shall be fined under this title, imprisoned not more than 10 years, or both.

18 U.S.C. § 666(a)(1) (emphasis added).

*Standard for Bail on Appeal*

18 U.S.C. § 3143(b), provides that a defendant who has been sentenced to a term of imprisonment, and who has filed a notice of appeal, be detained unless a district court finds:

>   (A)   by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community . . . and
>
>   (B)   that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in –
>
>   (i)   reversal;
>
>   (ii)   an order for a new trial;
>
>   (iii)   a sentence that does not include a term of imprisonment, or
>
>   (iv)   a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

Mintz & Oppenheim LLP

Hon. Robert P. Patterson
United Stated District Judge
December 30, 2008
Page 3 of 8

18 U.S.C. § 3143(b);  *See also United States v. Tunik*, 2001 WL 282698 (S.D.N.Y.), *2.

Thus, to warrant bail on appeal, the defendant must establish (1) that she is not a flight risk or a danger to the community; (2) that the appeal is not for purposes of delay; and (3) that the application raises "a substantial question of law or fact," which (4) if resolved in her favor is likely to result in a reversal or new trial.  *United States v. Barber*, 2004 WL 1505529 (N.D.N.Y.), *2.  As detailed below, it is respectfully submitted that those requirements are met in this case and bail should be continued during the pendency of appellate process.

*Dr. Karron Presents No Risk of Flight or Danger to the Community*

As noted above, after re-sentencing in this case on October 27, 2008, Dr. Karron was permitted by the District Court to self-surrender in January 2009. As such, Dr. Karron has now been out on bail since first being arrested in June 2007.  In addition, during the initial sentencing in this case, the Court imposed a sentence that was to begin with 7½ months' home confinement, indicating a belief that Dr. Karron did not pose a risk of flight.

Additionally,  the crime of conviction – misapplication of federal grant money – is not a crime of violence and at  her original sentencing hearing, the Court specifically found that Dr. Karron posed no threat to the community.  As such, it is respectfully submitted that Dr. Karron does not pose a danger to any person or the community as a whole.

*Substantial Question of Law or Fact*

Therefore, as set forth above, because Dr. Karron poses neither a risk of flight nor a danger to the community, the controlling question in this application is whether her appeal raises "a substantial question of law or fact," that if resolved in her favor is likely to result in a reversal or new trial.  *United States v. Barber*, 2004 WL 1505529 (N.D.N.Y.).

A "substantial question" is a question "of more substance than would be necessary to a finding that it was not frivolous.  It is a 'close' question or one that very well could be decided the other way." *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985), *quoting United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985).  The Second Circuit has also described a "substantial question" as a question that is "fairly debatable," or "one which is either novel, which has not be decided by controlling precedent, or which is fairly doubtful." *Id.*

It is not necessary that this Court agree such error occurred or is likely to result in a reversal to determine that bail on appeal is warranted.  *Id.* at 124-25.  Rather, "all that a district court need do is find a substantial question which, if decided favorably to the defendant on appeal, would likely result in a reversal or new trial." *Tunick, supra*, *3.  Indeed, in *Tunick*, the court expressly declined to make a finding that the conviction was likely to be reversed, but

Mintz & Oppenheim LLP

Hon. Robert P. Patterson
United Stated District Judge
December 30, 2008
Page 4 of 8

granted bail because the issue raised was a 'close' question in that it "very well could be decided the other way." *Id*. at *2-3.

As detailed below, this case involves a due process challenge to the statute of conviction which clearly meets the threshold of being a "substantial question." As currently interpreted, the misapplication component of 18 U.S.C. § 666 does not require an intent to benefit the defendant or a third party or defraud the government. Rather the staute criminalizes the unauthorized use of federal grant funds *including* when such use is for the legitimate benefit of the grant recipient. As a result, enforcement of the statue dispenses with the requirement that the defendant act with the requisite intent.

*Conviction Under The Misapplication Theory of 18 U.S.C. § 666(a)(1) Violates
Due Process By Criminalizing Conduct Without Regard to Criminal Intent*

As currently interpreted, a conviction under 18 U.S.C. § 666(a)(1) for the misapplication of federal monies does not include any requirement that a defendant act with *criminal* intent for the benefit of either himself or a third party or to defraud the government. Rather, all that is necessary is that a defendant intend to spend monies under their control in an unauthorized manner – even if for legitimate purposes that benefit the grantee. *See United States v. Urlacher*, 979 F.2d 935 (2d Cir. 1992). At Dr. Karron's trial, the Court instructed the jury as to that element, by explaining that:

> The third element the government must prove beyond a reasonable doubt is that the defendant without authority intentionally misapplied money. To intentionally misapply money means to use money under the control of CASI knowing that such use is unauthorized or unjustifiable or wrongful. Intentional misapplication includes the wrongful use of money for a purpose the defendant knew was unauthorized, even if such use benefitted CASI in some way.
>
> In this case, to intentionally misapply money means to intentionally apply the grant money received by CASI in a manner which the defendant knew was unauthorized under the terms and conditions of the grant. Misapplication of money, however, does not apply to bona fide salary, wages, fringe benefits, or other compensation paid, or expenses paid or reimbursed, in the usual course of business.
>
> As I said, the government must prove beyond a reasonable doubt that the defendant acted intentionally in misapplying grant money. To find that the defendant acted intentionally, you must be satisfied

Mintz & Oppenheim LLP

Hon. Robert P. Patterson
United Stated District Judge
December 30, 2008
Page 5 of 8

> beyond a reasonable doubt that the defendant acted deliberately and purposefully. That is, the defendant's misapplication must have been the product of the defendant's conscious objective to spend the money for an unauthorized purpose, rather than the product of a mistake or accident or some other innocent reason.

TT. 1351-52.

The issue, as recognized by the Seventh Circuit, is the statute's failure to define the term misapplication. *United States v. Thompson*, 484 F.3d 877, 881 (7th Cir. 2007). As the Court explained, while 18 U.S.C. § 666 is often referred to as the "anti-bribery statute" and it is captioned as an anti-theft and bribery provision, "the word 'misapplies is not a defined term,'" and the absence of a definition results in a significant degree of ambiguity in application. *Id.* Ultimately, the Court of Appeals determined that "a narrow reading that limits § 666 to theft, extortion, bribery and similar corrupt acts" was correct under the Rule of Lenity "lest the judiciary create, in common law fashion, offenses that have never received legislative approbation, and about which adequate notice has not been given to those who might be ensnared." *Id.*

While § 666 does not offer a definition, "misapplication" is defined within the context of other federal criminal statutes. For example, 18 U.S.C. § 656, a bank fraud statute, proscribes the "theft, embezzlement or misapplication by bank officer or employee." 18 U.S.C. § 656. Although not explicit within the text of the statute, the intent to defraud, injure or deceive the bank is an essential element of a § 656 "criminal misapplication" prosecution. *See United States v. Castigila*, 894 F.2d 533, 537-38 (2d Cir. 1990)("an intent to injure, defraud, or deceive the bank [is] the requisite *mens rea* under Section 656."); *see also United States v. Clark*. 765 F.2d 297, 303 (2d Cir. 1985) ("it is evident that to constitute 'misapplication' within the meaning of [§ 656] the bank officer's conduct must involve some risk of pecuniary loss to the bank".) Therefore, in contrast to a conviction for misapplication under § 666, § 656 requires that a defendant act with the requisite intent to defraud.

It is well settled that criminal statutes that require no *mens rea* are generally disfavored; *United States v. Balint*, 258 U.S. 250, 251-52 (1922); and "that the common-law rule requiring *mens rea* has been 'followed in regard to statutory crimes even where the statutory definition did not in terms include it.'" *Staples v. United States*, 511 U.S. 600, 605-06 (1994) *quoting Balint*, *supra* at 251-252. Ordinarily, imposition of strict liability without regard for a *mens rea* element is limited to a class of statutes regulating "public welfare offenses," defined by the Supreme Court as "statutes regulating 'dangerous or deleterious devices or products or obnoxious waste materials.'" *Id.* Clearly, the misapplication of federal funds is not the type of "public welfare offense" contemplated above.

Yet, the requirement of *mens rea* has been written out of a § 666 prosecution based upon the Second Circuit's decision in *Urlacher*, wherein the Court of Appeals defined intentional

Mintz & Oppenheim LLP

Hon. Robert P. Patterson
United Stated District Judge
December 30, 2008
Page 6 of 8

misapplication as "intentional misapplication for otherwise legitimate purposes." *Urlacher,* 979 F.2d at 938.  To the extent the Court does not require that a defendant act with the intent to injure or defraud – and only requires the intentional misapplication of federal funds – this construct is inconsistent with the requirement that criminal statute require a defendant act with criminal intent.  Stated otherwise, under *Urlacher*, as opposed to the recent *Thompson* decision or a §656 case, a § 666 conviction can be had absent any finding of intent to defraud or commit a corrupt act underlying the misapplication of federal funds.  That failure to require a *mens rea* element violates the notice provision of the due process clause.

Moreover, despite the court's ultimate holding in *Urlacher*, it is clear that, in that case, evidence of defendant's intent to defraud *did exist* and *was presented to the jury at trial*.  As the court described, in addressing his claim that the statute failed to provide notice that his actions were illegal, "Urlacher spent police funds for unauthorized purposes; he failed to prove that these funds were spent for legitimate police purposes.  Furthermore the jury found that he intended to defraud the city." *Id.* at 939.

Here, the defendant was not charged with fraud and the jury was not required to make a finding of intent to defraud.  Rather, the jury was instructed – and the government argued – that defendant's intentional failure to abide by the NIST approved budget, with nothing more, was a sufficient basis upon which to convict.

*If Decided Favorably on Appeal this Issue Would*
*Likely Result in a Reversal or a New Trial*

Once it is determined that a "substantial question" has been raised, the Court must then "determine whether that question is 'so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial.  *Randell*, 761 F.2d at 125, *quoting United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985).  Based on the foregoing, it is clear that this threshold requirement is met as well.

A review of the October 20, 2008 sentencing hearing makes clear the importance of this issue with respect to Dr. Karron's conviction.  At that hearing, the government argued, within the context of calculating the loss for guidelines purposes, that the loss included any money spent in a manner inconsistent with CASI's budget as approved by NIST – a position consistent with their theory at trial.  For example, the following colloquy took place:

> AUSA: ...[T]he general position of the government on loss, which is that unless it's specifically budgeted for – that it has been preapproved in a budget or had subsequent approval authority from NIST, or whatever expenditure it may be, that its overbudget or an item in a category that is not a budgeted category, that constitutes a loss to the government.  The reason why is –

Mintz & Oppenheim LLP

Hon. Robert P. Patterson
United Stated District Judge
December 30, 2008
Page 7 of 8

> COURT: It has to be – it seems to me it has to be a loss as to which there was criminal intent.
>
> AUSA: Your Honor, I think –
>
> COURT: In order for there to be an intentional misapplication of funds. *You have to have criminal intent here. The fact that the government lost money on the grant or the money was expended improperly does not necessarily mean that there was criminal intent involved in all those expenditures.*

10/20/08, ST at 12-13. (Emphasis added).

The Court ultimately determined that the government had proven at least $120,000 of the ATP grant money had been misapplied with criminal intent and specifically addressed the money spent for rent as "evidence of the intentional misapplication" because "[t]he defendant as told time and time again not to use the . . . funds for rent or utilites." *Id.* at 91. Thus the standard for determining whether the defendant had violated 18 U.S.C. § 666(a)(1) with the requisite intent turned not on whether the defendant acted with the intent to defraud the government, but on whether it violated the terms of CASI's NIST approved budget.

The evidence in the record was clear that CASI was housed in the defendant's apartment and that renovations to that apartment were made to the benefit the grant at the expense of the value of the apartment and that the rise utility charges were the direct result of CASI's work on the grant. It is certainly conceivable that the jury – had it had the option – could have found, despite Dr. Karron's failure to abide by the budget, that he did not act with criminal intent.

*Trial Counsel's Failure to Object Amounted to Plain Error*

If this Court were to find that the issue was not preserved for review, it is respectfully submitted that the Court of Appeals may still review the matter because the standards for "plain error" have been met.[1]

To meet the standard for "plain error" review, a defendant must demonstrate that: (1) there was an error, (2) that the error was plain, and (3) that the error affects substantial rights, so that (4) the Court of Appeals may notice the error if it seriously affects the fairness, integrity or public reputation of judicial proceedings. *United States v. Diaz*, 176 F.3d 52, 83 (2d Cir. 1999)

---

[1] While trial counsel did not raise this issue in precise manner it is raised here, it is submitted that the arguments raised in its initial post trial memorandum challenging the sufficiency of the evidence of Dr. Karron's intent to misapply funds coupled with its argument that the Court's jury instructions were erroneous are sufficient to preserve this argument on appeal.

Mintz & Oppenheim LLP

Hon. Robert P. Patterson
United Stated District Judge
December 30, 2008
Page 8 of 8

*cert den. sub non Rivera v. United States*, 528 U.S. 875 (1999), *citing United States v. Olana*, 507 U.S. 725, 732 (1993).  Here, because the error is of constitutional dimensions – the defendant was denied her rights under the Due Process clause – there is a substantial likelihood that the Second Circuit would find plain error.

As such, as detailed above, it is submitted that bail pending appeal is authorized and appropriate in this case, and that the Court should order the current conditions if release continued.  However, if the Court felt that more restrictive conditions were required, it is submitted that applying the conditions of home confinement originally included in the initial sentence would be appropriate.

**Conclusion**

Therefore, for all the reasons set forth above, it is respectfully submitted that Dr. Karron raises a substantial question of law that, if resolved in her favor on appeal, is likely to result in a reversal, and, as a result, should be permitted to remain free on bail pending the outcome of her appeal.

Respectfully submitted

Laura A. Oppenheim, Esq.

Marshall A. Mintz, Esq.

Mintz & Oppenheim LLP
260 Madison Avenue, 18th Fl.
New York, New York 10016
(212) 447-1800

*Appellate Counsel to Defendant
Dr. Daniel Karron*

cc:   CLERK of the Court (ECF)

   AUSA Steve Kwok (ECF)