

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 8, 2007

**VIA FACSIMILE**

The Honorable Robert P. Patterson
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    <u>United States</u> v. <u>Daniel B. Karron</u>,
                 S1 07 Cr. 541 (RPP)

Dear Judge Patterson,

      The Government respectfully submits this letter in response to defendant Daniel B. Karron's letter of August 2, 2007, requesting additional discovery under Fed. R. Crim. P. 16(a). Because the Government has fully complied with its discovery obligations, and all discoverable materials have been turned over to the defense, the defendant's request for additional discovery should be denied.

**I.    Background**

      The First Superseding Indictment charges Daniel B. Karron, the defendant, with violating Title 18, United States Code, Section 666. In particular, the defendant is alleged to have knowingly misapplied more than $5,000 in Federal funds while he was the President and Chief Technical Officer of Computer Aided Surgery, Inc. ("CASI"), a company that was receiving benefits in excess of $10,000 under a Federal grant program in any one-year period. The Government alleges that the defendant willfully diverted Federal grant funds intended for CASI's scientific research toward the payment of unauthorized personal expenses, including restaurant meals, rent, home remodeling, the purchase of miscellaneous household items (pots and pans, blenders, vacuum cleaners, etc.), and medical expenses related to the defendant's sex-change operation. The Government's current estimate of the actual loss exceeds $390,000.

      On July 11, 2007, the Government produced discovery totaling more than 5,200 pages, and offered defense counsel the opportunity to inspect original copies of all documents in the Government's possession, custody, or control. The Government renewed the offer again at the parties' last conference before the Court two weeks ago. To date, defense counsel has not availed himself of this opportunity, even while he continues to complain about the alleged

The Honorable Robert P. Patterson
August 8, 2007
Page 2

illegibility of certain duplicate copies produced by the Government.

The Government's production includes copies of the following:

- Audit reports prepared by an accountant previously hired by CASI, Joan Hayes, documenting various accounting irregularities, as well as all supporting documents and correspondence to and from Ms. Hayes (see, e.g., 1204-41);

- Defendant's written responses to that internal audit (see, e.g., 512-50);

- Correspondence between CASI and the administrator of the grant, the National Institute of Standards and Technology ("NIST"), concerning terms and conditions of the grant, approved and proposed budgets, and responses to various requests for budget modification (see, e.g., 89-128);

- CASI's business bank account statements at Chase Bank, including copies of canceled checks, showing all account activities during the relevant period (see, e.g., 1381-3267);

- CASI's AMEX credit card statements during the relevant period showing all charges placed on the company's credit card and running month-to-month balances (see, e.g., 4132-390);

- Vendor invoices listing specific items purchased by the defendant, purportedly on CASI's behalf (see, e.g., 4394-962);

- Defendant's personal bank account statements at Chase Bank during the relevant period (see, e.g., 3268-4131); and

- Computer printouts from defendant's Quick Book bookkeeping system in the Government's possession (see, e.g., 4963-5221).

## II. The Defendant's Request for Additional Discovery

The defendant's August 2 letter sets forth a laundry list of additional items to which the defendant believes he is entitled, but contains no explanation as to why additional discovery is warranted. Hence, the defendant asserts that the items enumerated in his wishlist "are in the possession of the United States Attorney" (p. 1), but provides no basis for this assertion. He says that these items "must be produced pursuant to Rule 16(a) of the Federal Rule of Procedure," (p. 1), but provides no support as to how they are relevant to this case, much less

The Honorable Robert P. Patterson
August 8, 2007
Page 3

how they fit within the well-defined limits of criminal discovery, as opposed to the liberal standards of civil discovery against which the defendant's wide-ranging discovery requests appear to have been drafted.

Defendant's list of 63 disparate items defies easy categorization. For the sake of simplicity, however, they can roughly be divided into three groups:

(1) materials that the Government has already produced;

(2) documents prepared by "an attorney for the government or other government agent in connection with investigating or prosecuting the case" that are expressly exempt from discovery under Fed R. Crim. P. 16(a)(2); and

(3) materials that the Government does not have possession, to which it has no ready access, and, thus, the Government is not required to provide under Rule 16.

Items 2b, 3, 4a, 13-14, 16-17, 20-22, and 25 in the defendant's letter fall into the first category. As noted above, to the best of the Government's knowledge, the Government has already produced the entire universe of documents relating to the audit conducted Ms. Hayes; correspondence between NIST and CASI, including all budget modification requests and responses; bank statements both for CASI's business account and for the defendant's own personal account; and CASI's AMEX credit card statements.

Items 2, 7, 24 fall into the second category. The defendant seeks to compel the Government to produce "a spreadsheet detailing and totaling which checks are considered part of the fraud, "inventory notes taken by the government site visit team" (Item #7), and "NIST Internal Memoranda" (Item #24). By their own terms, these requests are directed at Government work product that are not discoverable under the plain language of Rule 16(a)(2). Moreover, the defendant now has all the raw materials from which these spreadsheets or memoranda would have been prepared. In the event that the agents who prepared notes or memoranda are called as witnesses at trial, the Government will produce 3500 materials on a timely basis.

The remainder of the items referenced in the defendant's letter fall in the third category — i.e., materials that the Government has never seen and does not have possession, to which it has no ready access, and, thus, is not required to produce under Rule 16. By way of illustration, the defendant seeks such random items as "copies of taxi receipt for Hayes" (Item # 49), "copies of gas, tolls paid by Hayes by cash or credit card" (Item # 51), "receipts for each e-mail item sent and received" (Item #23), "[c]opies of revocation of Power of Attorney by Dr Karron" (Item #60), and "draft scientific papers, literature reviews, and other documentation on

The Honorable Robert P. Patterson
August 8, 2007
Page 4

the scientific progress made [on the Government-funded project] prior, during, and after the grant" (Item # 32). Simply put, the Government does not have these materials, has never sought them, and has no present plans to acquire them, because they are so far afield from this case that there is no good-faith basis to obtain them by means of Grand Jury subpoenas or otherwise. In the unexpected event that these materials turn out to be material to the preparation of a defense, the defendant can request that the Court issue a trial subpoena at the appropriate time under Fed. R. Crim. P. 17(c).[1]

In addition to his requests for additional discovery, the defendant complains that certain Bates-stamped pages were not received or are illegible. After receiving the defendant's letter, the Government examined an exact duplicate of the documents produced to the defendant, and not a single one of the listed Bates-stamped pages was found to be missing, and the copies provided to the defense are the best copies available to the Government. To avoid all further controversy, however, the Government remains ready to make the necessary arrangements, if defense counsel is interested, for defense counsel to inspect original documents in the Government's possession, or to examine another set of the Government's production and have certain pages re-copied.

Finally, although the defendant no longer argues the point in his letter, defense counsel stated at the last status conference that the Government "seized all of Dr. Karron's records" and that the defendant could not "possibly defend this case if he doesn't have access to all his records." (7/24/07 Tr. at 5). Defense counsel was referring to a seizure, executed at the defendant's apartment pursuant to a warrant signed by Magistrate Judge Douglas F. Eaton in a related civil forfeiture action, to recover 20-plus computers, computer-related equipment, and assorted household items that were documented to have been unlawfully purchased with

---

[1] Without explaining how the produced documents are inadequate, the defendant also requests that the Government reproduce certain materials in a different format. Hence, while acknowledging that he has received "American Express Statements," which show the time and place of each transaction, the defendant now seeks the "actual charge slips" (Item # 3) that contain "blue pen signatures" (Item #33). Similarly, although the Government has provided "scanned images of all CASI and Dr. Karron's checks," the defendant wants "<u>color</u> scanned images." (Item # 4) (emphasis added). Likewise, the defendant seeks "backup copies" and "electronic copies," in ".QBB format." and ".QDF" format, of the Quick Books bookkeeping system (Items # 31, 63), now that he chooses to forgo his earlier accusation that the Government failed to produce printouts from his computer Quick Books bookkeeping system. (7/24/07 Tr. at 14) ("They haven't turned over the Quicken reports showing the expense line by line.").
Once again, the Government does not have any of these materials. Because virtually the same information is contained in the documents that the Government has already produced, these requests by the defendant further no legitimate purpose and serve only to harass and impose unnecessary burdens on the Government.

The Honorable Robert P. Patterson
August 8, 2007
Page 5

Government funds for purposes unrelated to the Government-funded research.

      As shown in the inventory itemizing the property seized (attached hereto), Federal agents did not seize any of the defendant's "records" per se. To the extent the defendant has documents stored in the seized computers, absent the issuance of a search warrant for those computers, the Government does not have the lawful authority to access those documents, or even to run the software programs necessary to retrieve those electronic documents. In addition, in a conversation with the Government on or about June 19, 2007, defense counsel stated that certain documents stored in these computers are covered by the attorney-client privilege. Given these and other legal and practical constraints, the Government has not been able to verify the existence of documents that the defendant claims are stored in his computers.

      Even if the Government did obtain authorization to conduct a search, the defendant has made no showing that these documents are material or even relevant to his defense, putting aside the issue of whether the defendant is prepared to bear the cost — which, by the defendant's own estimate, runs between "ten and $20,000" — in searching and duplicating the hard drives of these super-computers containing "terabytes" upon "terabytes" of memory. (7/24/07 Tr. at 16-17). See Premises Known as 225, 1468 & 1470 Statler Towers v. United States, 787 F.2d 796, 798 (2d Cir. 1986) ("Rule 16's clear import is that the defendants, at least nonindigent ones, must pay the cost of copying documents legally held by the government."); United States v. Hoskins, 639 F. Supp. 512 (W.D.N.Y. 1986) (denying defendants' request that the government pay the copying costs of documents seized under a lawfully issued warrant).

### III. Conclusion

      For all of the foregoing reasons, the Government respectfully submits that the defendant's request for additional discovery should be denied.[2] Absent additional motions by defense counsel — at the June 20 status conference, the Court set today as the deadline by which

---

[2] The defendant's request for additional discovery should also be denied because it was submitted out of time. At the July 24 status conference, the Court directed the defendant to submit his letter requesting additional discovery no later than August 1. It was only after the Government called defense counsel a day later that the letter was faxed to the Court and to the Office sometime in the afternoon on August 2.
      Of course, the Government is aware of the continuing nature of its discovery obligations and is committed to producing to the defense additional discoverable materials on a timely basis.

The Honorable Robert P. Patterson
August 8, 2007
Page 6

defense counsel must advise the Court and the Government of any motions — the Government additionally requests that the Court set a trial date for this matter as soon as the Court's calendar permits.

          Respectfully submitted,

          MICHAEL J. GARCIA
          United States Attorney

By: _____
     Chi T. Steve Kwok
     Assistant United States Attorney
     Tel: (212) 637-2415

cc:    Ronald Rubinstein (by fax)
       *Counsel for Daniel B. Karron*