# EXHIBIT A

DOC # 74

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 07 Cr. 541 (RPP)

DANIEL B. KARRON,

Defendant.

------------------------------x

U.S. DISTRICT COURT FILED NOV 25 2008 S.D. OF N.Y.

New York, N.Y.
October 20, 2008
2:30 p.m.

Before:

HON. ROBERT P. PATTERSON, JR.,

District Judge

APPEARANCES

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
STEVE KWOK
CHRISTIAN EVERDELL
Assistant United States Attorneys

RUBINSTEIN & COROZZO
Attorneys for Defendant
BY: RONALD RUBINSTEIN

ALSO PRESENT: KIRK YAMATANI
RACHEL ONDRIK

be hanging. I have never thought I would be impaled.

I'm redundant and I'm repetitive and I forget what I say, and I'm a disaster. I really am. I will be late for my own funeral. If I do something too fast, I always forget something, screw something up.

I apologize to the Court for keeping you this late and for everything else that I've done in the past.

Thank you, your Honor.

THE COURT: Thank you.

As I said, under the guidelines, the Court's findings are that the base offense level for this violation for Title 18 Section 666 is found under 2B1.1. The base offense level under subsection (a)(2) of that guidelines is 6. Because more than $120,000 was lost through inappropriate expenses, 10 points are added. Making that decision the Court looked to guideline note which applies to 2F. The guideline note that applies to grants is federal grant under guideline commentary (f)(2)(ii). At that guideline of 16, the guidelines calls for a sentence of 21 to 27 months in prison.

Turning to 18 3553(a) of Title 18, the Court, as the Court must, consider any guidelines sentence as a result of the Booker decision, the Court must take into account the history and circumstances of the offense, history and characteristics of the defendant. The defendant here has no prior record.

And addressing the Court he said that he's never

before had the responsibility before of handling a federal grant and dealt with contracts in the past. Those are contracts, I gather, to perform specific services for a fee, which is a little different than a federal grant. Both of those circumstances relate to the circumstances of the offense and the history and characteristics of the defendant.

But the Court must also impose a sentence which is sufficient but not greater than necessary to comply with the purposes set forth in subparagraph 2 of 3553(a), and that is the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide a just punishment for the offense; B, to afford adequate deterrence to criminal conduct of other persons, and to protect the public from further crimes of the defendant -- C, to protect the public from further crimes of the defendant; and, D, to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

I don't believe that it would be necessary to protect the public from further crimes of the defendant that would serve to ameliorate the penalty imposed under the guidelines.

I have some difficulty with this case because delineating the intent of the defendant is difficult for me. It is true that the loss is at least $120,000, but the defendant's intent in causing that loss is something that the

Court has been concerned about.

And, on the other hand, the Court has to consider a sentence that affords adequate deterrence to criminal conduct and the government gives these grants, they are placing a lot of trust in the grantee. It's important that the grantee not intentionally misapply the funds.

It's clear to me that there was an intentional misapplication of the rent money. The defendant was told time and time again not to use the rent funds for rent or for utilities. That's what the record here substantiates. That's a lesser sum than the sum found in the guidelines.

Under the circumstances, it seems to me as the first offense that the Court should not impose a sentence that is heavy as the guideline and, yet, impose a sentence that provides deterrence to other people. I am going to vary the sentence pursuant to Section 3553(a).

I am going to impose a sentence of 15 months under zone C of the guidelines, one half of the term to be served in prison and one half of home confinement, eight months' imprisonment, and the remainder in home confinement.

The term of supervised release is three years, restitution in the amount of $120,000. That's required, I guess. And a special assessment of $100. I think I'm right on the split sentence, that if it falls in the 12 category, I can give the split sentence.

MR. KWOK: Section 5C1.1, section D.

MR. EVERDELL: Yes, your Honor, I believe it is correct. It has to be a one-for-one ratio.

THE COURT: One has to be imprisonment, the other has to be home confinement.

MR. EVERDELL: That's correct.

THE COURT: That's to enable defendant to take care of his mother as soon as possible.

Three years of supervised release. There will also be a $100 assessment as provided by the law. The conditions of supervised release are: The defendant shall not commit another federal, state, or local crime; shall not illegally possess a controlled substance; shall not possess a firearm or destructive device. Mandatory drug testing is suspended due to the Court's determination that defendant poses little risk of future substance abuse. The defendant shall cooperate in the collection of DNA as directed by the probation officer.

Standard conditions of supervision 1 through 13 will also apply with the following special conditions: Defendant shall provide the probation officer with access to any requested financial information; defendant shall not incur new credit charges or open additional lines of credit without approval of the probation officer unless the defendant is in compliance with the installment schedule, installment payment schedule.

Defendant is to report to the nearest probation office within 72 hours of release from custody and be supervised in the district of his residence. $100 will be due immediately. That's the special assessment. The restitution shall be in the amount of $120,000, payable to the clerk of the United States District Court for disbursement to Julie Weiblinger, U.S. Department of Commerce, National Institute of Standards and Technology, Advanced Technology Program Receivables Group, 100 Bureau Drive, Mail Stop 1624, Gaithersburg, Maryland 20899-1624.

The restitution shall be paid in monthly installments of 10 percent of gross monthly income over the period of supervision to commence 30 days after the date of release from custody, and the defendant shall notify the U.S. Attorney's Office for this district within 30 days of any change of name or residence address that occurs while any portion of the restitution remains unpaid.

If the defendant is engaged in BOP non-UNICOR program, the defendant shall pay $25 per quarter towards the restitution. However, if the defendant participates in the BOP's UNICOR program as a grade 1 through 4, the defendant shall pay 50 percent of her UNICOR earnings to any financial penalties, consistent with Bureau of Prisons regulations of 28 CFI Section 45.11. The factors in 18 United States Code Section 3664(f)(2) were considered in formulating the payment

schedule.

There will be no fine in this case in view of the restitution requirements.

I gather you want to have a voluntary surrender, Mr. Rubinstein?

MR. RUBINSTEIN: Yes, your Honor. I was wondering, if it's possible, I don't know how it works. Is it possible to do the home confinement first and then the incarceration afterwards? So this way if they can get his mother home, because her life expectancy isn't that long.

THE COURT: It seems to me that it could. I don't see anything under the section that says it couldn't. It certainly surprises me.

MR. EVERDELL: I'm sorry to interrupt, your Honor. I do have a different case with Judge Kaplan where he did allow that very thing to happen. If that precedent counts for anything, I believe there is a precedent in the Southern District for doing this.

THE COURT: I am going to do it that way. So the home confinement period will start. You better see that the defendant sees the probation officer in the next 24 hours, Mr. Rubinstein.

MR. RUBINSTEIN: Absolutely. I will go there tomorrow.

THE COURT: We will make arrangements for home

confinement to start. If you have home confinement, there will have to be a telephone without call forwarding in the residence in which the defendant would be located because they have to know that he's not leaving the premises during the period of home confinement. Home confinement is not to interfere with religious services or employment, but it will require the defendant to be home in the evening and nonworking hours part of the day.

MR. RUBINSTEIN: And medical, your Honor?

THE COURT: What?

MR. RUBINSTEIN: And medical.

THE COURT: Of course, he can attend medical appointments for himself and his mother.

There will be no call forwarding or call waiting or modem attached to the telephones. It's clear that he is serving his term of home confinement without any further investigation by the probation office.

MR. RUBINSTEIN: Your Honor, would your Honor consider -- first, on the restitution, did your Honor say how that's to be paid?

THE COURT: Yes, I did. 10 percent of gross pay.

MR. RUBINSTEIN: Is that without interest?

THE COURT: I leave that to the greater, higher authorities. I believe that interest does run.

MR. RUBINSTEIN: Would your Honor --

THE COURT: I believe interest runs. But it can start after the period of incarceration.

MR. RUBINSTEIN: Your Honor, I believe that the defendant wishes to appeal this matter. That's what I've been informed. In view of that, I wonder if your Honor will consider releasing him pending the appeal. He is going to be on house arrest for seven and a half -- I'll reserve the right to make that application.

THE COURT: He can appeal, but I don't see where you can appeal, but is that beneficial to your situation for me to suspend the imposition of sentence pending the appeal?

MR. RUBINSTEIN: I would like to serve the house arrest portion while his mother is alive.

THE COURT: I can't break it up, I don't believe, under the statute.

MR. RUBINSTEIN: I'll have to consider it, Judge. We will go to probation tomorrow. As far as the house arrest, we don't have a problem with starting that immediately.

THE COURT: Make an expedited appeal.

MR. RUBINSTEIN: File an expedited appeal?

THE COURT: All right.

MR. RUBINSTEIN: Thank you very much, your Honor. Good night.

MR. KWOK: A few things, your Honor.

If the government could request the Court to give an

oral pronouncement of his forfeiture order. There is a forfeiture allegation in the indictment.

THE COURT: Is forfeiture required here? I didn't see that in the presentence report.

MR. KWOK: It is not reflected in the presentence report, but, as your Honor might recall, there was an order by stipulation between the parties where we seized the proceeds from the sale of defendant's apartment. And so if we could forfeit that in partial satisfaction of the restitution obligation.

THE COURT: You can submit a forfeiture order, yes.

MR. RUBINSTEIN: The marshals are holding those funds, if that's what the government is talking about.

THE COURT: I have to make an order with respect to it. The marshals already have it.

MR. KWOK: But the order the Court signed says that the money will be held with the U.S. Marshals pending further order of the Court. We will certainly submit an order to release those funds.

THE COURT: So ordered.

MR. KWOK: Thank you.

Also, just one last matter. Because this is a second superseding indictment, the government moves that the underlying indictments be dismissed.

THE COURT: That's granted. I am sure there is no

opposition to that.

MR. RUBINSTEIN: No opposition, your Honor.

THE COURT: You have ten days to file a notice of appeal, Dr. Karron. All you have to do is write a letter to the Court, United States District Court, 500 Pearl Street, New York, New York, and say, I wish to appeal and that will preserve your appeal, but you have to do it within the ten-day period because, otherwise, the Second Circuit will say you waived your right to appeal by not filing that letter within the ten-day period.

You understand me? You're nodding yes.

If you want to appeal, you just write the letter within ten days and that preserves your right. If you don't write it in the ten-day period, you lose your right to appeal. If you don't have funds for an appeal, the Court of Appeals will decide on it for you to handle your appeal free of charge.

MR. RUBINSTEIN: What they do, Judge, in reality, is, they assign trial counsel free of charge. I had that experience with Judge Kaplan, who was mentioned once today already.

o0o