Dr D B Karron (Ph.D.)
1636 3rd Avenue, #300
New York, New York 10128
e-mail: drdbkarron@gmail.com
voice: +1 (516) 515 1474

Wednesday, October 18, 2017 19:55H

BY FAX, by United States Post Office, and by Hand Delivery

The Honorable Kevin P. Castel
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Courtroom 11D
New York, New York 10007
Chambers Phone: (212) 805-0262
Deputy Phone: (212) 805-0131
Fax: (212) 805-7949

```
┌─────────────────────────┐
│ R E C E I V E D         │
│  ┌──────────────────┐   │
│  │   OCT 1 8 2017    │   │
│  └──────────────────┘   │
│     CHAMBERS OF         │
│    P. KEVIN CASTEL      │
│        U.S.D.J.         │
└─────────────────────────┘
```

CC:
Jessica Greenwood
LEAD ATTORNEY
ATTORNEY TO BE NOTICED
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
212-637-2200
Voice Fax: 212-637-2527
Email: Jessica.Greenwood@usdoj.gov


Chi T. Steve Kwok U.S. Attorney's Office, SDNY (St Andw's)
LEAD ATTORNEY
ATTORNEY TO BE NOTICED
One St. Andrew's Plaza
New York, NY 10007
Voice (212)637-2415
Fax: (212)637-2937
Email: steve.kwok@skadden.com


Re:    United States v. Daniel B. Karron, 07 Cr. 541 (PKC)

Dear Judge Castel;

Enclosed is my response to the governments answer to my motion to vacate under Rule 60(b) due to mistake, error, and etc.

Because of the very late date (today) that I received a paper copy of the government's response letter mailed to the wrong postal address, and given that the government did not respond to the docket clerk notice to the attorney GREENWOOD that her filing was rejected and requesting her to resubmit, I will send another letter regarding procedural exceptions and procedural issues raised in this case to date.

This second motion focuses on substantive issues. A letter to the court about procedural issues and a renewed request for ECF access will be forwarded in a few days.

Sincerely,

Dr. D B Karron
Defendant, *pro se*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-V.-

DANIEL B. KARRON

Defendant

07-cr-0541(PKC)
Second Memorandum of Law and
Declaration of Facts in support of
Motion to Vacate Rule by 60(b)

I, Daniel B. KARRON (KARRON) am the Defendant in this case. I swear to the truth of the following facts under penalty of law. I also bring issues of law to the attention of the Court issues of law raised by the government to assist the court in its consideration of this case.

## 1. Summary Statement

The government made a litany of mistakes and errors large and small. The government's mistakes (see below) that are the subject of this lawsuit fits squarely, precisely, and exactly into the language of Rule 60(b)(1) and (4)[1]. By the conduct of the opposing party, one could conceivably add Rule 60(b)(3). This particular post-trial mistake is in a case with a continuing heritage of mistakes, errors, lies, and fraud (See Exhibits 1,2 &3).

In this lawsuit, the judge, court, and government made mistakes in its judgments in the Karron case. These judgments represent the fruit of the prosecutors long and hard-won case against KARRON. The case agents, government auditors, and prosecution garnered medals, promotions and merit pay (Exhibit 4). It is natural that the government resist challenges to its judgments and for the court to desire finality to a closed case. The government should have been much more diligent in verifying, managing and assisting the court in maintaining the pinnacle of its prosecutorial efforts, the criminal judgment. That there are mistakes is obvious and admitted in the governments reply unsworn reply letter. The government neglected to repair these mistakes in an effective timely fashion. These were not harmless errors. The harm was against the

---

1 *(b) GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR PROCEEDING.*
On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
    (1) **mistake, inadvertence, surprise, or excusable neglect;**
    (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
    (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
    (4) **the judgment is void;**

government to the benefit of KARRON after being pauperized by the government[2]. Eight years later after imprisonment, KARRON made many Freedom of Information Act (FOIA) requests that disclosed these and other errors and the government's tacit knowledge of them. Further, this money, that is being encumbered by the governments Original Lien, was pledged to KARRON's attorney to pay for KARRON's defense and exoneration (Exhibit 5). As such these funds are protected payments to an attorney for the defense of constitutional rights (See generally US v. MONSANTO et al)

Instead of the government owning up to the consequences of its actions and accepting the consequences of the government's bureaucratic indolence with candor and transparency, the prosecution has again chosen its tradition in this case of taking the low road with coverup and misrepresentations. These actions compound these mistakes. The government response to KARRON's complaints about overbilling has motivated this motion. If there is a "moral of the story" in this case "it's not the crime, it's the coverup that gets you in the end".

## 2. The mistake, inadvertence, and excusable neglect now inexcusable

Specifically, these mistakes are

- An original error copying from the KARRON Sentencing Transcript to the Original Judgment the restitution amount. The transcript record shows sentencing Judge Patterson stated a restitution amount of $120,000.00 in open court and with all parties present. The Original Judgment document shows a restitution amount of $125,000. This is a *prima facia* error. See Docket #129.1, Sentencing transcript Exhibit An of Government's letter.
- This error propagated to the Court's "Judgment money book".
- This error propagated to the Docket as unnumbered item PRIOR to docket number 68 as shown here in Exhibit 6,
- This error propagated to the government's original Lien filed November 24, 2009, for $125,000. See Docket #129.3, Exhibit C of Government's letter.
- The office of Financial Investigation billed and was seeking to recover against this faulty lien of $125,000 against karron for eight (8) years. See Exhibit 7 and 8. A number of FOIA requests to recover the contemporaneous billing documents have been stonewalled by the EOUSA. See Exhibit 9
- A meeting was called and during negotiations, it appeared that the collateral civil judgment for four Million dollars against Karron was abandoned . See Exhibit 8
- An amended lien was filed July 26, 2016, some 8 years after the Amended Judgment was docketed. See Docket #129.5, Government Exhibit D

---

[2] In a review of the Luis v. United States Supreme Court case Charles P. Pierce wrote that "my every instinct tells me that the Supreme Court shouldn't have to [declare that the government cannot] pauperize a criminal defendant". *The Supreme Court Just Did Something the Supreme Court Shouldn't Have to Do*, ESQUIRE (March 31, 2016)

- In a recient (February 2017) real estate transaction involving KARRON's inheritance, the buyer's title company did not acknowledge the amended lien but used the Original Lien. See Exhibit 10. The lien reports two federal liens. The pair of liens consists of the Original lien and an associated IRS Tax Lien resulting from the Original Judgment restitution order as taxable income as a result of an IRS audit ordered by the government.

The time for fixing these errors by the government has long since passed. NYS Lien Law gives a period of months to amend a lien. Rule 60 give a period of a year. All the applicable state and federal law says the time to repair has long since tolled.

## 3. Substantive issues raised by the government's unsworn letter.

The government's unsworn incorrectly styled memorandum of law was rejected by the Court ECF Clerk. The clerk asked the government attorney to resubmit on the docket. The government did not resubmit as of the defendant's deadline to make an answering submission today October 18, 2017.

The odd procedural circumstances of how these arguments were miscommunicated could be construed in two extremes. At best the letter was an as willful disregard of the court's request to resubmit and can be liberally construed as some kind of informal answer letter. At worst this communication was an inappropriate *ex-parte* communication to the court and unresponsive to the court's briefing schedule order. In that sense, the court would have ground to reject this letter. That could be construed as the government defaulting in this case. That would result in KARRON's motion request be unopposed. The court would then grant the requested court orders to investigate and vacate unopposed.

This second sworn declaration of fact and law by KARRON is not to be construed as a reply or acceptance of the government's communication as a valid motion reply pleading as specified by local rules and Federal Civil and Criminal rules.

### I.    Government Misrepresentation of Point of Fact ONE.  (she said the gate was shut but not that the horses are gone)

The Government makes the following statement in the Discussion section. This statement gives the entirely false impression that the government acted properly. The statement gives the false impression that the government obtained an amended Notice of Lien as a matter of due course of the routine governmental process. The government elides mention three crucial matters of undeniable verifiable fact that changes everything.

> Discussion: [...] The [KARRON] Motion proceeds on the premise that the Original Judgment is "void" and that, as a result, the Original Notice of Lien relying on the Original Judgment is likewise void. The Motion misses the point. **Crucially, after the Amended Judgment was issued, the Government filed an Amended Notice of Lien in**

**the amount of $120,000.** [Section II, Discussion, Page 3, Paragraph 3] **[Emphasis Added]**

"the government filed an amended Notice of Lien in the amount of $120,000" Eight (8) years too late. In July of last year (2016). After KARRON filed various FOIA requests to investigate this matter. In the second memorandum of law section below, we will discuss the various tolling and notification rules of federal and state law regarding corrected and amended liens.

The above government statement above is analogous to the aphorism of the farm hand who truthfully reports to his farmer employer that he closed the gate to the stables but neglects to mention that WHEN he closed the gate all the horses were long left, were long gone and lost. Yes, the stable hand is not lying when he says he closed the gate but cannily refuses to admit responsibility for the lost horses.

KARRON sold a share in KARRON's mother's house. The closing was in February of this year (2017). The buyer's title insurance company diligently researched a full lien and tax report on KARRON and the property. For faults, we can only surmise at this point the buyer's title insurer knowingly rejected the government's Amended Lien. The title insurer title report contained a reference to two federal liens. The title insurer ignored the Amended Lien filing and escrowed funds for the Original Lien, and for an unrelated Federal Tax Lien. The late late late 8 years late Amended Lien was null and void, without its intended effect.

**II.    Misrepresentation Point of Fact TWO (The books were cooked)**

Discussion: [...] Further, as documented in the Petitioner Payment History [Exhibit E], the Government has **correctly calculated the Petitioner's total principal liability for restitution and the $100 special assessment as $120,100** – as ordered by Judge Patterson in the Amended Judgment [Section II, Discussion, Page 3, Paragraph 3] **[Emphasis Added]**

The government "cooked" its computer record books sometime around the time it filed the worthless Amended Lien in 2015. Contemporaneous billing and email prior to the filing of the Amended Lien shows payments applied against an initial balance of $125,000. The government financial investigator requested KARRON appear for a desk audit and cited the Original Lien balance of $125,000. After that time the government changed or corrected its records to apply KARRON's payments not against the original judgment balance of $125,000 but against a $120,000 balance. The schedule shown in Exhibit E is misleading. There are no running balances and do not reflect the balance history of the application of KARRON's payments. KARRON has been complaining that the government was overbilling for years to no avail. Exhibit E as a misleading historical record. Discovery of the contemporaneous billing and records over the past 9 years will establish which lien the government was collecting funds from KARRON. Currently, outstanding KARRON FOIA requests are being stonewalled.

### III. Misrepresentation Point of Fact THREE (The government is not so simply incorrect)

> Discussion: […] The **Petitioner is simply incorrect** when the Petitioner claims that the Government has "continued to invoice and reference the Original Judgment in the amount of $125,000" and "has ignored the Amended Judgment." (*See* Dkt. 119 at 1). [Section II, Discussion, Page 3, Paragraph 3] [**Emphasis Added**]

This issue can be simply decided by the discovery of the original invoices and contemporaneous records during the 9 years since the government's award of the KARRON judgments. The government's elision of telling information paints a false picture.

### IV. Admission of error and inappropriate derision.

> Discussion:[…] Likewise, the Petitioner's request for Rule 16 discovery has no basis. The criminal case against the Petitioner has long since been resolved. Federal Rule of Criminal Procedure 16 simply does not apply to the Motion. In any event, no discovery is appropriate here. The Motion reflects nothing more than the Petitioner's latest, futile attempt to attack the criminal judgment, restitution order, and resulting lien against the Petitioner. As it was entitled to do, the Government properly obtained a lien based first on the Original Judgment and then, when that judgment was amended, **obtained a lien based on the Amended Judgment**. Similarly, **while the Original Judgment in one instance <u>listed an incorrect, higher restitution amount than was ordered by Judge Patterson</u> and that was otherwise listed in the Original Judgment<u>, that error</u> was corrected in the Amended Judgment. Likewise, while <u>the Clerk's ledger and docket entry for the Original Judgment reflected the improper restitution amount of $125,000</u>, the Petitioner's Payment History with the Government properly reflects a total principal liability for restitution and special assessment of $120,100.** [Section II, Discussion, Page 3, Paragraph 4 [**Emphasis Added**]

## V. Who is lying?

Conclusion. As explained above, the Motion is **based on a fundamental misstatement of the facts** and represents only the latest, futile attempt by the Petitioner to attack a valid judgment and resulting lien. The Motion is meritless and should be denied. [Section III, Conclusion, Page 4, Paragraph 1 **[Emphasis Added]**

## 4. Procedural issues raised by the government response

The government response to KARRON's complaints was to file an incorrectly styled unsworn Memorandum of Law that makes material and prima face misrepresentations of well-documented fact. What is the purpose of the governments reply statements of fact without an attestation of the truth of the statements? Was this an error of negligence and inadvertence, or something else?

## 5. Brief history of KARRON's case

KARRON had been complaining for years that the government was overbilling on KARRON's judgment restitution without acknowledgment. The government's unsworn letter reply document reveals that the government did file an untimely faulty amended lien 8 years late. This filing was apparently the government response when alerted by KARRON's FOIA requests and communication with the government. That faulty amended lien was ignored in a recent real estate transaction by the title insurer in the KARRON estate matter made this year. The title insurer only recognized the Original Department of Justice lien and a Federal Tax Lien. This is the Lien that this motion seeks to have the court set aside. This was not an error or omission by the title insurer. The insurer correctly ignored two other ineffective liens as detailed by the title report and a lien search. KARRON seeks to vacate the original lien and judgment in this lawsuit for funding for KARRON's legal defense. These funds were pledged to KARRON's defense counsel years ago, prior to the original lien's filing date.

Further consequences of these errors in "judgment" include the evidence that the government quietly all but abandoned the collateral multimillion-dollar civil judgment against KARRON. That civil judgment apparently depended on the nullified original judgment, amongst other errors. Can this court construe this as additional circumstantial evidence of the government's tacit knowledge of the indefensibility of the original judgment?

The foundation of KARRON's criminal conviction and collateral civil attack has thoroughly rotted out over the years. KARRON's conviction and civil death is a significant violation of constitutional rights of due process and vigorous unconflicted legal representation. This motion seeks the release of improperly held funds.

As is known by the prosecution, and may be news to the new responding Assistant US Attorney GREENWOOD, the case against KARRON was brought by two disgraced former federal case

agents Rachel ONDRIK and Kirk YAMATANI. These special agents and auditor Belinda RILEY, as well as prosecutor Steve KWOK, would go on to win medals and promotions based on my conviction.

Then, in a stunning turn of events, suitable for a fantastic crime novel, KARRON's two lead case agents ONDRIK and YAMATANI were arrested after years of investigation by their boss the then Inspector General Todd ZINSER. The targeted pair of agents then started a retaliatory counter campaign against their boss ZINSER. That attempted retaliation included cajoling, convincing and suborning other Special Agent colleagues to bring false charges against their boss the IG. This was an admitted attempt to pressure the IG and the FBI while the IG was attempting to bring charges against the soon to be disgraced agents. Because of the overwhelming body of evidence brought by the government, the two special agents abandoned their vindictive counterattack and took a guilty plea each. In their statement of admitted facts, the pair admits to systematic and knowing falsification of sworn government papers starting at the time they were awarded medals and promotions for my conviction. The period of admitted lying commenced while I was serving my sentence in prison in 2009. The evidence compiled over the years shows their habitual and systematic lying reaches back to the very beginning of the KARRON case and many others.

The release of the lien-ed funds by the government in this case motion is required to fund KARRON's attorney in the protection of KARRON's constitutional rights to due process and successive habeas review. As such these funds are denied KARRON, they hamstring KARRON's post-conviction challenge predicated on significant changes of circumstances and new evidence not available at the time of trial and first habeas challenge and appeals.

I declare under penalty of perjury that the foregoing facts are true and correct.


Dated: Wednesday, October 18, 2017
      New York, New York


Signed

Daniel B. KARRON
Defendant
*Pro Se*
e-Mail: mailto:drdbkarron@gmail.com

voice: (516) 515 1474
Fax: +1 516 234 7758
Care of Aldine Publications, LLC
1636 Third Avenue
Suite 300,
New York, New York 10128

6. Affirmation of Service

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-V.-

DANIEL B. KARRON
Defendant

07-cr-00541 (PKC)
AFFIRMATION OF SERVICE

I, DB KARRON, the Defendant declare under penalty of perjury that I served a copy of this second memorandum of law and declaration if facts to the court and all listed below by priority mail and hand delivery and email where available.

The Honorable Kevin P. Castel
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Courtroom 11D
New York, New York 10007

Chambers Phone: (212) 805-0262
Deputy Phone: (212) 805-0131
Fax: (212) 805-7949

Jessica Greenwood
LEAD ATTORNEY
ATTORNEY TO BE NOTICED
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007

Voice: 212-637-2200
Voice Fax: 212-637-2527
Email: Jessica.Greenwood@usdoj.gov

Chi T. Steve Kwok U.S. Attorney's Office, SDNY (St Andw's)
LEAD ATTORNEY
ATTORNEY TO BE NOTICED
One St. Andrew's Plaza
New York, NY 10007

Voice (212)637-2415

Fax: (212)637-2937
Email: steve.kwok@skadden.com

Signed

Daniel B. KARRON
    Defendant
    *Pro Se*
    e-Mail: drdbkarron@gmail.com
    voice: (516) 515 1474
    Care of Aldine Publications, LLC
    1636 Third Avenue
    Suite 300,
    New York, New York 10128

    Dated Wednesday, October 18, 2017

7. Exhibits

# Exhibit

# 1



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

May 29, 2013

**BY FEDEX**

Daniel B. Karron, Ph.D.
348 East Fulton Street
Long Beach, NY 11561

    Re: <u>United States</u> v. <u>Daniel B. Karron</u>
      07 Cr. 541 (RPP)
      11 Civ. 1874 (RPP)

Dear Dr. Karron:

    We understand you are not, or are no longer, represented by counsel in the above matters. We are accordingly addressing this letter to you directly. You may wish to consult with counsel regarding what significance, if any, the following information may have for the above proceedings.

    Specifically, at the time of your prosecution, Rachel Ondrik and Kirk Yamatani were Special Agents of the United States Department of Commerce, Office of Inspector General. They participated in that capacity in the investigation of your case and assisted us in its prosecution.

    Since that time, on April 30, 2013, Rachel Ondrik and Kirk Yamatani each pled guilty to one count of Government voucher fraud, a Class A misdemeanor, in violation of Title 18, United States Code, Section 1018. The cases were prosecuted by the United States Attorney's Office for the District of Maryland. <u>See</u> <u>United States</u> v. <u>Rachel Ondrik</u>, 13 Cr. 148 (CBD) (D. Md.), and <u>United States</u> v. <u>Kirk Yamatani</u>, 13 Cr. 149 (CBD) (D. Md.). Copies of the charging instruments, plea agreements, and statements of facts are enclosed.

    The Department of Commerce Office of Inspector General ("OIG") and the Federal Bureau of Investigation ("FBI") have advised us that they did not uncover any evidence that the conduct described in the enclosed court documents predated the charged offense period

Daniel B. Karron
May 29, 2013
Page 2

of 2009 through 2011. Accordingly, no evidence was uncovered that any such conduct affected the investigation of your case.

Very truly yours,

PREET BHARARA
United States Attorney

By:

Chi T. Steve Kwok
Christian R. Everdell
Assistant United States Attorneys
(212) 637-2415/2556

Enclosures

2

# Exhibit

# 2

FILED ____ ENTERED ____
____ RECEIVED

APR 3 0 2013

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
_____ DEPUTY

## ATTACHMENT A - STATEMENT OF FACTS: RACHEL ONDRIK

*The United States and the Defendant agree that if this case proceeded to trial, the United States would prove the following facts below beyond a reasonable doubt. They agree that these are not all of the facts that would be proved if this case proceeded to trial.*

Defendant **RACHEL ONDRIK** ("ONDRIK") was a Special Agent of the United States Department of Commerce ("DOC"), Office of the Inspector General ("OIG"). In this role, she was covered by the United States Office of Personnel Management's series 1811, which sets forth requirements for positions that supervise, lead, or perform work involving the planning, conducting, or managing of investigations related to violations of federal criminal laws. Work in this series requires knowledge of criminal investigative techniques, rules of criminal procedures, laws, and precedent court decisions concerning the admissibility of evidence, constitutional rights, search and seizure, and related issues in the conduct of investigations.

**ONDRIK**'s first duty station was in Washington, D.C. In 2007, she transferred to the DOC OIG office in Atlanta, Georgia. In 2009, she returned to Washington, D.C. where she continued to work for DOC OIG. During and after this change of station from Georgia to Washington, D.C., **ONDRIK** defrauded and attempted to defraud the United States and the DOC by submitting false writings and making material misrepresentations to the DOC while seeking reimbursement for relocation expenses. **ONDRIK** submitted these false writings to National Institute of Standards and Technology ("NIST") Office of Financial Resource Management, a division of the DOC located in Gaithersburg, Maryland, which processed DOC OIG's travel claims.

On or after July 7, 2009, **ONDRIK** applied for and was granted relocation benefits from the DOC because her transfer from Atlanta to Washington, D.C. was determined to be in the government's interest. **ONDRIK**'s authorized relocation benefits included reimbursement for a househunting trip, *en route* travel, and temporary quarters subsistence expenses ("TQSE"). Approval of these reimbursements was contingent on **ONDRIK**'s adherence to the Federal Travel Regulation.

Contemporaneous e-mail communications between **ONDRIK** and **Kirk Yamatani**, a fellow DOC OIG agent also relocating from Atlanta to Washington at the same time, show that both agents were aware of the rules and regulations governing their relocations and reimbursements for related expenses, yet both **ONDRIK** and **Yamatani** nevertheless attempted to secure payment from the DOC in amounts exceeding that authorized by the governing regulations. For example, in an e-mail exchange on May 6, 2009, **Yamatani** and **ONDRIK** agreed that the Federal Travel Regulation permitted a certain method of reimbursement, known as the "fixed rate" method, for a period of time limited to 30 days, with no extensions permitted. Although **Yamatani** and **ONDRIK** agreed that their supervisors at OIG were unaware of the temporal limitation on this entitlement, they agreed to conceal these limitations from DOC OIG and to seek reimbursements in excess of what the regulation authorized.

1

Further, on or about August 20, 2009, ONDRIK knowingly submitted a false travel voucher seeking reimbursement for a ten-day househunting trip she claimed that she and her husband took to the Washington, D.C. area between July 22 and July 31, 2009. On the voucher, ONDRIK claimed that they departed their Acworth, Georgia, home on the morning of July 22, 2009, drove their personal vehicle to Rockville, Maryland, and then later returned by car to Georgia on July 31, 2009. In the voucher for this househunting trip, ONDRIK claimed reimbursement for various expenses, such as lodging, meals, mileage. In fact, ONDRIK did not make a househunting trip during this period, nor did the actual househunting trip she took earlier in July last ten days, nor did she incur the claimed expenses. ONDRIK nonetheless knowingly submitted the voucher containing that false statement to DOC OIG and NIST claiming reimbursement of $4058.75.

On or about August 10, 2009, ONDRIK submitted false travel vouchers seeking reimbursement of $1,531 for her official en route travel to her new duty station, and on or about September 26, 2009, ONDRIK submitted a false TQSE voucher claiming $33,973.50 in expenses, more than $20,000 over what the Federal Travel Regulation allowed. In ONDRIK's en route voucher, she claimed that she and her family departed their Georgia home on August 5, 2009 at 8:00 am and drove their personal vehicle to Roanoke, Virginia, where they spent the night. ONDRIK then claimed to have driven the rest of the trip to Clarksburg, Maryland, the following day. On her voucher, ONDRIK claimed reimbursement for meals, hotel, mileage, and "miscellaneous expenses." In fact, ONDRIK and her family had traveled to Maryland on July 28, 2009, during the period she claimed they were househunting, and did not return to Georgia as her vouchers falsely claimed. ONDRIK was aware that both vouchers contained false information when she completed them and submitted them to DOC OIG and NIST. Altogether, ONDRIK submitted at least three false vouchers seeking reimbursement from the United States for $39,563.25.

When a NIST examiner reviewed ONDRIK's TQSE voucher, she realized the amount claimed was far in excess of ONDRIK's actual entitlements under the Federal Travel Regulation, denied it, and instead paid only the $10,815 to which ONDRIK was entitled. ONDRIK, however, persisted in her claim for reimbursement in the higher amount, despite the fact that she knew that her claim exceeded the 30 day period authorized by regulations. On several occasions between 2009 and 2011, ONDRIK reaffirmed the earlier false statements in her vouchers and made false statements regarding the circumstances of her claims for reimbursement, which constituted obstructive conduct.

2

Between June 2009 and February 2011, **ONDRIK** further committed several instances of time and attendance fraud against her agency. The actual loss to the United States that was the direct and proximate result of **ONDRIK**'s knowing and intentional conduct was approximately $14,000.

I have read this statement of facts, and have carefully reviewed it with my attorney. I acknowledge that it is true and correct.

_4-30-13_
Date

_Rachel Ondrik_
Rachel Ondrik

I am Rachel Ondrik's attorney.  I have carefully reviewed the statement of facts with her.

_4-30-73_
Date

_Thomas Abbenante_
Thomas Abbenante, Esq.

3

# Exhibit

# 3

Sign In | Register    Jobs | Real Estate | Rentals | Cars | Print Subscription | Today's Paper | Discussions | Going Out Guide | Personal Post | Videos

Politics | Opinions | Local | Sports | National | World | Business | Tech | Lifestyle | Entertainment | Jobs | More

# Federal Eye

Keeping an eye on the federal government

Archives        Follow:      Search The Washington Post

Comments | Reprints

## Former commerce agents plead guilty to fraud against inspector general's office

By Josh Hicks, Published: May 1, 2013 at 6:00 am   E-mail the writer

13   Comments    Like   20    Tweet   6    More

**Eye Opener**    *Updated at 8:30 p.m.*

Two former special agents for the inspector general's office of the Commerce Department who accused superiors of wrongdoing pleaded guilty Tuesday to filing false expense claims and clocking hours they didn't work, according to the Justice Department.

Rachel Ondrik, 35, of Frederick, and Kirk Yamatani, 38, of Ashburn, sought payments for more than $36,000 each in false relocation expenses, according to their plea agreements.

They also committed time and attendance fraud, the Justice Department said. As part of their pleas, Ondrik and Yamatani agreed to probation and $42,000 each in fines and restitution to the government. Sentencing is set for June 19.

Commerce Department Inspector General Todd Zinser said Tuesday that the former agents waged a smear campaign against his office while they were under investigation.

"In addition to the fraud perpetrated on the U.S. taxpayers, these now former employees also retaliated by carrying out a destructive campaign of disparagement and false allegations against the Office of the Inspector General," Zinser said in a statement.

Commerce Inspector General Todd Zinser. (Commerce Department Inspector General's Office)

The former agents filed complaints against his office to the Commerce secretary, the FBI, the U.S. Attorney's Office, and the Office for Civil Rights, according to documents obtained by The Washington Post.

The Office of Special Counsel is investigating Zinser for allegedly blackmailing four Commerce agents into signing nondisclosure agreements that kept them from talking to

investigators and the public about undisclosed claims of wrongdoing by the inspector general's office.

The Merit Systems Protection Board lifted the gag agreement in December with a stay order through Jan. 14.

The Office of Special Counsel has not sought an extension of the stay because Zinser retracted the nondisclosure agreements, according to OSC spokesman Adam Miles.

The four agents involved in that case accused Zinser of threatening to place negative performance reviews in their personnel files unless they agreed not to speak out against the inspector general's office, according to the Office of Special Counsel.

"It was all a manipulated, false narrative," Zinser said of the accusations.

The inspector general added that Ondrik and Yamatani "might be in the same boat, or they could be the same individuals" as the agents who took their claims to the counsel's office.

The attorneys who represent those two agents issued a joint statement Wednesday criticizing Zinser for suggesting that their clients might be connected with the whistleblower case.

Tom Abbenante represents Ondrik; Steven Levin represents Yamatani.

"Mr. Zinser's efforts to absolve himself of any of his own alleged wrongdoing by connecting these two matters in a press release was inappropriate, to say the least," the attorneys said. "It is our understanding that Mr. Zinser's alleged misconduct against other special agents is a separate and unrelated matter."

The Office of Special Counsel said Wednesday that Ondrik and Yamatani were not among the four agents involved in the whistleblower case and that the agency is still investigating possible violations by Zinser.

"OSC's stay request was based on evidence gathered from several witnesses and was not brought on behalf of the two former special agents who entered into a plea agreement yesterday," Miles said Wednesday.

"OSC encourages all parties to respect the integrity of the investigative process and has no further comment at this time."

*For more federal news, visit The Federal Eye, The Fed Page and Post Politics.*

*To connect with Josh Hicks, follow his Twitter feed, subscribe to his Facebook page or e-mail josh.hicks@wpdpost.com.*

# Exhibit

# 4

UNITED STATES DEPARTMENT OF COMMERCE
Office of Inspector General
Washington, D.C. 20230

April 29, 2015

VIA E-MAIL

D B Karron
348 East Fulton Street
Long Beach, NY 11561
drdbkarron@gmail.com

RE: FOIA Request No. DOC-OIG-2015-001023

Dear Dr. Karron:

This letter is regarding your Freedom of Information Act (FOIA) request, tracking number DOC-OIG-001023 (you have identified this request as request "DoC OIG FOIA XXXXXV(55)" for your own tracking purposes), received by the Department of Commerce, Office of Inspector General (OIG) on April 2, 2015, in which you seek, as clarified April 2, 2015, "a copy of a [named OIG employee's] 2009 DOC Bronze Medal Award citation and details, to include what acts, events, or work product the award was awarded for."

A search of records maintained by the OIG has located four (4) pages responsive to your request. We have reviewed these pages under the terms of FOIA and have determined that two (2) pages may be released to you in full. One (1) page must be partially withheld under FOIA exemption (b)(6), 5 U.S.C. § 552(b)(6), which protects information in personnel, medical or similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. One (1) page has been partially withheld because it contains portions that are not responsive to your request. Copies of the four pages are enclosed with the relevant withholdings noted.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of FOIA. See 5 U.S.C. § 552(c) (2012 & Supp. I 2013). This response is limited to those records that are subject to the requirements of FOIA. This is a standard notification to all OIG requesters and should not be taken as an indication that excluded records do, or do not, exist.

You have the right to appeal this partial denial of your request. An appeal must be received within thirty (30) calendar days of the date of this response letter by the Counsel to the Inspector General, U.S. Department of Commerce, Office of Inspector General, Office of Counsel, Room 7898C, 14th and Constitution Avenue, N.W., Washington, D.C. 20230. Your appeal may also be sent by e-mail to FOIA@oig.doc.gov, by facsimile (fax) to 202-501-7335, or by FOIAonline, if you have an account in FOIAonline, at
https://foiaonline.regulations.gov/foia/action/public/home#.

The appeal should include a copy of the original request and this initial denial letter. In addition, the appeal should include a statement of the reasons why the records requested should be made

# Bronze
## *Medal Awards*



**Rachel Oudrik**
**Belinda Riley**
**Kirk Yamatani**

For exceptional leadership in directing and working on a
multidisciplinary team, resulting in the prosecution of a significant
criminal grant fraud case.





*The Department's Bronze Medal is
the highest honorary award that can be granted by the
Inspector General. Employees are selected for
significant contributions, unusual initiative,
or continued high performance
in carrying out the mission of OIG.*



**UNITED STATES DEPARTMENT OF COMMERCE**
**The Inspector General**
Washington, D.C. 20230

November 17, 2009

Belinda Riley

(b) (6)

Dear Belinda:

On behalf of all your colleagues here at OIG, please accept my congratulations on being chosen to receive the Department of Commerce Bronze Medal. The Bronze Medal is the highest award Commerce agencies can bestow on their employees. It is given to the select few whose exemplary achievements directly enhance agency or Department operations.

You displayed exceptional leadership in working on a multidisciplinary team that resulted in the prosecution of a significant criminal grant fraud case.

Thank you for your valuable work and your dedication to the mission of OIG, and again, congratulations on receiving this well-deserved award. My best wishes for your continued success.

Sincerely,

Todd J. Zinser

Todd J. Zinser



# Exhibit

# 5

*make 3+
copies
Send Original to
Rubinstein*

## ASSIGNMENT AND SETTLEMENT AGREEMENT

*United States v. Daniel B. Karron*
Indictment No. 07-cr-00541 (RPP)

I, _DANIEL B KARRON_ of _#60010054 B3 FEDERAL PRISON CAMP_
a/k/a Dianne Karron          _ALDERSON WV 24910_

Certify that I owe the law firm of Rubinstein & Corozzo, LLP, a balance of

$235,000 ("Two-hundred thirty-five thousand") for legal services rendered on my

behalf in *United States v. Daniel B. Karron*. In consideration of this debt, I agree to

assign all right, title, and interest, which I have or may acquire in the estate of my

beloved mother, Marian Karron, to the law firm of Rubinstein & Corozzo, whether

such interest shall vest by will or intestacy.

Dated: _May 27, 2009_          _Daniel B Karron_

                         DANIEL B. KARRON

Sworn to before me this
_27_ day of _May_, 2009

_Tina Wickline_
Notary Public

OFFICIAL SEAL
STATE OF WEST VIRGINIA
NOTARY PUBLIC
TINA WICKLINE
FEDERAL PRISON CAMP
DEPARTMENT OF JUSTICE
ALDERSON, WV 24910
My Commission Expires 04-15-2013

# Exhibit

# 6

| 10/23/2008 | Judgment entered in money judgment book as #08,1970 as to Daniel B. Karron in the amount of $ 125,100.00, re: <u>68</u> Judgment. (dt) (Entered: 10/27/2008) |
|---|---|

# Exhibit

# 7



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

Financial Litigation Unit
86 Chambers Street
New York, New York 10007

April 14, 2016

Daniel Karron, a/k/a Diane Karron
10 Pheasant Lane
New Milford, CT 06776

Re:    United States v. Daniel Karron
       Court No.: 07 CR 00541-01 (RPP)

Dear Ms. Karron:

 This office is reviewing your debt to the United States, in the amount of $125,000.00. To do this it is necessary to have a personal interview with you.

 Therefore, we have scheduled an appointment for you on May 10, 2016, at 10:00 a.m. at the United States Attorney's Office, 86 Chambers Street, 3rd floor, New York, New York 10007 at which time we will review your case.

 You are required to furnish the documents listed below at the time of the interview. Failure to do so will result in the issuance of a subpoena duces tecum for any or all of the following documents.

1. Copies of your pay stubs, receipts, 1099 earning statements, W-2 forms, disability benefits, unemployment benefits, welfare re-certification letter and social security statement of benefits for the last 3 months.

2. Federal income tax records and returns with all schedules for the last 3 years.

3. Business records for the present calendar year which reflect assets, liabilities, gross receipts and expenses for any sole proprietorship, partnership or corporation in which you or your spouse has any interest.

4. Bank statements for the past three (3) months from all banks or other financial institutions, where you, or your spouse, have an account of any kind.

5. All trust agreements in which you, or your spouse, are a named trustee or beneficiary.

# Exhibit

# 8

 Gmail

Dr DB Karron <dbkarron@gmail.com>

## confirming 26 May
9 messages

---

**Dr DB Karron (PhD)** <drdbkarron@gmail.com>
Reply-To: drdbkarron@gmail.com
To: maria.cotto@usdoj.gov
Cc: "Ronald Rubinstein, Esq" <ronald.rubinstein@gmail.com>

Tue, May 10, 2016 at 11:15 AM

Thank for calling.

Before I launch into anything, please acknowledge this email.

I will memorialize our conversation then.

I am surprised that the 4M judgement was dismissed.
Thank you for your research into this.

Sincerely,

Dr. Karron

---

"D B Karron, Ph.D., a/k/a Dr. K" <drdbkarron@gmail.com>
<karron@casl.net> skype: drdbkarron
+1 (516) 515-1474 **(will find me)**
+1 (917) 674-0828 (voice and cell texting, SMS)

---

**Cotto, Maria (USANYS)** <Maria.Cotto@usdoj.gov>
To: "drdbkarron@gmail.com" <drdbkarron@gmail.com>
Cc: "Ronald Rubinstein, Esq" <ronald.rubinstein@gmail.com>

Tue, May 10, 2016 at 11:39 AM

Mr. Karron,

This email will confirm our scheduled meeting for May 26 at 11 am.

I must clarify that the civil judgment was returned to the agency for collection.

In other words, the DOJ is not enforcing collection, but the original agency may.

I look forward to our meeting.

Regards,

Maria A. Cotto

Financial Investigator

U.S. Attorney's Office – SDNY

Financial Litigation Unit

# Exhibit

# 9

Dr. D B Karron (Ph.D.)
1636 3rd Ave, Apt 300
New York, NY 10128
e-mail: drdbkarron@gmail.com
Preferred means of communication is e-mail
Voice: (516) 515 1474

Friday, September 1, 2017

By E-mail only to USAEO.FOIA.Requests@usdoj.gov,
Sonja.Whitaker@usdoj.gov,
maria.cotto@usdoj.gov,
Jessica.Greenwood@usdoj.gov

Sonja Whitaker
Freedom of Information and Privacy Staff
Executive Office for United States Attorneys
Department of Justice
Suite 7300, Bicentennial Building
600 E Street, N.W.
Washington, DC 20530-0001
Phone: (202) 252-6020 Email:USAEO.FOIA.Requests@usdoj.gov

CC:
Jessica Greenwood
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
212-637-2200
Fax: 212-637-2527
Email: Jessica.Greenwood@usdoj.gov

Cc:
Ms. María A. Cotto
Financial Investigator at SDNY U.S. Attorney's Office,
US Department of Justice
86 Chambers Street
New York, NY 10007
Phone: (212) 637 2806, maria.cotto@usdoj.gov

CC:
Julie Ann Weiblinger
Receivables Group
National Institute of Standards and Technology
100 Bureau Drive
Gaithersburg, MD 20899
E-mail: julie.weiblinger@nist.gov
Phone: (301) 975-2173

RE: "New Freedom of Information Act Request **DoJ EOUSA FOIA 11 XI**"

Dear Ms. Sonja Whitaker;

This letter is a new FOIA request, as per your letter appended in Exhibit 1. All requested corrections are made and resubmitted with this request. This request consists of four (4) parts/requests. All POC(s) to obtain these documents are CC'ed and provided to assist your research efforts. Please note my new address above.

REQUEST 1:

A copy of the Department of Justice, Financial Litigation Unit billing and account history and balances in its efforts to collect the judgment rendered against me in the case of USA-v-KARRON-07-CR-541-RPP.

Department of Justice Account Number: 2009A07841/001,

REQUEST 2:

A copy of the Department of Justice, Financial Litigation Unit Billing, Invoices, and balances Case: USA v KARRON 08-cv-l0223

Department of Justice Account Number: 2013A67687/001,

REQUEST 3:

A copy of the transmittals of all of the payments I have made to the Clerk of the Court, Southern District of New York to NIST Receivables Group attention Julie Ann Weiblinger Receivables Group, as specified in the two Judgment against myself.

Payments were made while I was in prison under the Inmate Financial Responsibility Program Act of 18 CFR 545(b), payments extorted while on EDNY

pg. 2

probation, and payments made while under civil supervision in the case of USA-v-KARRON-07-CR-541-RPP. Documentation of these payments from the Department of Justice forwarded to the NIST Receivables group on my case as ordered by the court in the judgment, Exhibit 4

REQUEST 4:

A copy of the Department of Justice, Financial Litigation Unit E-mail, memos, and documentation regarding the return or referral of my case to originating agency as mentioned and memorialized in Exhibit 2, Page 4

Mr. Karron,

This email will confirm our scheduled meeting for May 26 at 11 am.
I must clarify that the civil judgment was returned to the agency for collection.
In other words, the DOJ is not enforcing collection, but the original agency may.
I look forward to our meeting.

Regards,

Maria A. Cotto
Financial Investigator
U.S. Attorney's Office – SDNY
Financial Litigation Unit
86 Chambers Street
New York, NY 10007
Tele. No.: 212-637-2806
Fax No.: 212-637-2717

Department of Justice Account Number: 2013A67687/001, Case: USA v KARRON 08-cv-l0223

## LOCATION OF RECORDS and PERSON of CONTACT(POC)

In your request for corrections, you asked in item 2:

> 2. [X] The files and records of United States Attorneys are maintained in over one hundred separate offices throughout the United States. **Please identify the specific United States Attorney's office(s), where you believe records may be located.** This would be primarily the district(s) in which a prosecution or litigation occurred. [ **Emphasis Added** ]

I believe the records I seek are in the care and custody of Ms. Maria Cotto at the Southern District of New York, Financial Litigation Unit on Chambers Street in New York, New York as CC'ed above. This is the district where I was prosecuted.

My POC on these matters over these 9 years is Ms. Maria Cotto, who is CC'ed on this FOIA request. The NIST side of this request is to Ms. Julie Ann Weiblinger, Receivables Group National Institute of Standards and Technology Phone: (301) 975-2173

### DECLARATION OF IDENTITY

I am the defendant in the above case.

A copy of executed FORM DOJ-361, notarized, as previously submitted is appended as Exhibit 3. This identification certification can serve for all future FOIA disclosures that I will make through the Department of Justice.

Thank you for your anticipated fruitful cooperation in this research task.

Sincerely,

D B Karron
*Requester*



**U.S. Department of Justice**

Executive Office for United States Attorneys

---

Freedom of Information and Privacy Staff

*Suite 7300, Bicentennial Building*
*600 E Street, NW*
*Washington, DC 20530*

*(202) 252-6020*
*FAX (202) 252-6047*

October 17, 2017

Dr. D.B. Karron
c/o Aldine Publications
1636 3rd Avenue, Suite 300
New York, NY 10128
dbkarron@gmail.com

FOIA Nos.: EOUSA-2017-001301 and EOUSA 2017-003306
Submitted Date: 04/21/2017 and 08/14/2017 and
Subject of Request: Self

Dear Dr. D.B. Karron:

The Executive Office for United States Attorneys (EOUSA) has received your Freedom of Information Act/Privacy Act request. A check of our files indicates you have submitted and been assigned several FOIA numbers in which you sought the same information. Since your request is being processed under EOUSA-2017-001322, we are closing EOUSA-2017-001301 and EOUSA 2017-003306 as a duplicate requests. Please cite EOUSA 2017-001322 in any future correspondence you send to this office.

EOUSA has received an exceedingly heavy volume of Freedom of Information Act/Privacy Act requests and therefore, this office will be unable to respond to your request within the time limits established by the Freedom of Information Act. Please be assured, however, that your request is being handled as equitably as possible and that all documents which can be released will be made available at the earliest possible date.

Sincerely,

Kevin Krebs
Assistant Director

*Form No. 000 – 2/16*

# Exhibit

# 10

FTWC-91
(Rev 11-97)

# First American Title Insurance Company
## of New York

### DEPOSIT AND ESCROW AGREEMENT

DATED _9/10/_ IN THE YEAR _____ TITLE NO. _AL 108687N_

First American Title Insurance Company of New York, as Depositary, acknowledges receipt from the undersigned Depositor of the

sum of _8,600._ 00 Dollars ($ _____ ) (the "Deposit") by

☐ Cash (check one)    ☐ Cashier Check    ☐ Certified Check    ☐ Personal Check

upon the following terms, covenants and conditions, including those set forth on the reverse side hereof which terms, covenants and conditions hereby made a part of this Deposit and Escrow Agreement ("Agreement") as if fully set forth herein, and Depositary is authorized as follows:

**A.** TO PAY, SATISFY, OR OTHERWISE DISPOSE OF THE FOLLOWING LIENS OR OTHER CHARGES AFFECTING SAID PREMISES, OUT OF THE DEPOSIT, INCLUDING INTEREST, PENALTIES, OTHER CHARGES AND ATTORNEY'S FEES, IF ANY:

C
O
M
P  (To Company)
A
N
Y
F
O
R
M

**B.** TO HOLD THE DEPOSIT AS SECURITY FOR THE PRODUCTION BY DEPOSITOR TO DEPOSITARY ON OR BEFORE _____ IN THE YEAR _____ OF THE DISPOSITION OF RECORD TO THE SATISFACTION OF DEPOSITARY OF THE FOLLOWING:

D
E
P  _HOLD DEPOSIT FOR E. MTGE OF MTGE THAT THE_
O  _ATTACHED MORTGAGE TO W. SIDE SAVE BANK_
S  _PAID SAT TO EXCEPTION 00XX THE WILL REC 861_
I  _GMAC_
T  _UNTIL A VALID PAY OFF LETTER HAS BEEN_
O  _RECEIVED 30 DAYS THE DEPOSIT CAN BE USED_
R  _TO PAY SAME_

AFFECTING PREMISES KNOWN AS _348 E. FULTON ST, Long Beach_
                                                          Village, Town
Section _____ Block _____ Lot(s) _____ County _____ or City.

DEPOSITARY IMPOSES FOR THIS SERVICE A CHARGE IN THE AMOUNT OF $ _85._ 00

First American Title Insurance Company of New York    AGREED TO:
By: _____                              _Daniel B. Karron_
        (Signature of Company Representative)           (Signature of Depositor)
Name, Address & Telephone Number of Depositor's Attorney
_Michael E. Mongelli II, ESQ_    _← SAME_
_41-07 162 ND ST. Flushing_                    (Signature - Depositor)
                         11358              _718-463-7333_
Mail balance to (check one) Depositor ☐  Attorney ☐  Other ☐

ALL REFUND CHECKS WILL BE PAYABLE TO THE ORDER OF DEPOSITOR.
NOTICE TO CLOSER—
        Where Deposit is made by a corporation obtain the following individual guaranty:
        To induce Depositary to enter into this agreement the undersigned guarantees the payment and the performance of all of the obligations of Depositor hereunder.

_____        _____
       Witness                      (See Reverse Side)              Signature

TITLE COMPANY COPY

 **American Land Services Inc.**

9901 Jericho Turnpike, Ste. 210, Syosset, NY 11791
Phone: 516.921.4466 * Fax: 516.921.3433 * EMail: info@AmericanLandServices.com

## *TITLE INSURANCE CLOSING INVOICE*

Title No.: AL108687N

Closing Date: 2/10/2017 at 12:30 PM

Applicant: Brendan P. Twomey, Esq
Phone Number: (516) 921-1556

Reference: from Found
Fax Number: (516) 977-9596

Premises: 348 East Fulton Street, Long Beach, NY 11561 Section 59 Block 136 Lot 25, 26, 27, 28, 29 & 30

Owner(s): Abraham B. Karron, Amiee Karron kian, Dr. Daniel B. Karron and Nathaniel Karron

Buyer(s): Summit Development & Management Corp

Other(s): Diana Karron

| CHARGE DESCRIPTION | BUYER(S) | SELLER(S) | LENDER |
|---|---|---|---|
| **POLICY PREMIUMS** | | | |
| Owners Policy Premium | $1,682.00 | | |
| **ENDORSEMENTS:** | | | |
| | | | |
| | | | |
| **RECORDING TAXES:** | | | |
| Transfer Tax New York State (TP584) | | $1,720.00 | |
| **RECORDING FEES:** | | | |
| Record Deed ( 5 pages includes RP-5217 Fee) | $500.00 | | |
| Recording Service Charge ($50 per document) | $50.00 | | |
| Nassau County Verification Fee ($355.00 per doc) | $355.00 | | |
| *SALES TAX* | *66.56* | | |
| *ACRIS PREP* | | *150.00* | |
| **OTHER CHARGES:** * | | | |
| Bankruptcy Searches + | $150.00 | | |
| Patriot Searches + | $150.00 | | |
| Municipal Searches + | $450.00 | | |
| Courier Fee | $40.00 | | |
| Federal tax liens (2) | | $600.00 | |
| Escrow Service Charge | | $95.00 | |
| 2016/17 School tax 1st half due 10/1/16 gd to 2/28/17 | | $3,563.34 | |
| *2015-16 TAX LIEN* | | *720B.74* | |
| 2017 County Tax 1st half due 1/1/17 gd to 2/28/17 | | $642.15 | |
| 2016/17 City Tax 1st half due 7/1/16 gd to 2/28/17 | | $4,424.49 | |
| 2016/17 City Tax 2nd half due 1/1/17 gd to 2/28/17 | | $2,672.48 | |
| 2011/12 school 2nd half gd to 2/15/17 | | $6,226.22 | |
| 2016 County and 2015/16 School gd to 2/15/17 | | $9,886.94 | |

### TITLE POLICIES

| | |
|---|---|
| Owners Policy: | $430,000.00 |
| Loan Policy: | |
| Sub. Loan Policy: | |

**Additional Information**
* POLICIES: Fee Policy Only
* PROPERTY TYPE IS RESIDENTIAL 1 OR 2 FAMILY ONLY (IMPROVED OR TO BE IMPROVED)
* CLOSER: Jack Maher

| | Totals | Checks |
|---|---|---|
| BUYER(S) | $ | $ |
| SELLER(S) | $ | $ |
| LENDER | $ | $ |
| | | $ |
| | | $ |
| | | $ |
| **TOTALS** | $ | $ |

*3643.56 + 45,179.33 = $48,822.89*

NOTICE: The costs for this transaction may include charges for certain services not specified in the state approved Rate Manual and are provided by the Company at the request of your lender or attorney. The issuance of the title policy is not dependent upon the performance of such additional services. Certain costs may be listed separately on your final HUD Statement Statement and not included under the real for Line 1101.