UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA

    -V.-


DANIEL B. KARRON

Defendant

---

07-cr-0541(PKC)
Second Memorandum of Law and
Declaration of Facts (corrected)
govin support of Motion to Vacate
Rule by 60(b)

---

I, Daniel B. KARRON (KARRON) am the Defendant in this case. I swear to the truth of the following facts under penalty of law. I also bring issues of law to the attention of the Court - issues of law raised by the government to assist the court in its consideration of this case.

## 1. Summary Statement

The government made a litany of mistakes and errors large and small. The government's mistakes (see *below*) that are the subject of this lawsuit fits squarely, precisely, and exactly into the language of Rule 60(b)(1) and (4)[1]. By the conduct of the opposing party, one could conceivably add Rule 60(b)(3). This particular post-trial mistake is in a case with a continuing heritage of mistakes, errors, lies, and fraud (See Exhibits 1,2 &3).

The Original Judgment was nullified and replaced by an Amended Judgment. KARRON is asking this court to recognize that fact and vacate the Original Judgment and the derived Original Lien. The government's initial error and its belated attempt to correct was 8 years too late. I am asking this court to affirm that fact in court ordered discovery.

In this lawsuit, the judge, court, and government made mistakes in its judgments in the Karron case. These judgments represent the fruit of the prosecutors' long and hard-won case against KARRON. The case agents, government auditors, and prosecution garnered medals, promotions and merit pay (Exhibit 4). It is natural that the government resists challenges to its judgments and for the court to desire finality to a closed case. That there are mistakes is obvious and admitted in the governments' unsworn reply letter. The government neglected to repair these mistakes in an effective timely fashion. These were not harmless errors. Eight years later after

---

*1 (b) GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR PROCEEDING.*
On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
a) **mistake, inadvertence, surprise, or excusable neglect;**
b) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
c) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
d) **the judgment is void;**

imprisonment, KARRON made many Freedom of Information Act (FOIA) requests that disclosed these and other errors. Additionally, these FOIA disclosures reveal and the government's tacit knowledge of these errors that it has been covering up. Further, this money, that is being encumbered by the governments Original Lien, was pledged to KARRON's defense attorneys RUBINSTEIN and COROZO pay for KARRON's defense and exoneration (Exhibit 5) before the Original Lien was filed. As such these funds are protected from seizure by the government for the defendant's defense attorney RUBINSTEIN for in the defense of the defendant's constitutional rights (See generally US v. MONSANTO et al).

Instead of the government owning up to the consequences of its actions and accepting the consequences of the government's bureaucratic indolence with candor and transparency, the prosecution has chosen to take the low road with coverup and misrepresentations. These actions compound these mistakes. The governments' lack of response to KARRON's complaints about the original excessive judgment amount and years of overbilling to correct the flawed judgment has motivated this motion. All of this goes beyond the scope of the original claim and reveals the need for court ordered discovery to get to the truth.

## 2. The mistake, inadvertence, and in-excusable neglect

Specifically, these mistakes are:

1) An original error copying the restitution amount from the KARRON Sentencing Transcript to the Original Judgment. The transcript record shows sentencing Judge Patterson stated a restitution amount of $120,000.00 in open court and with all parties present.
2) The Original Judgment document shows a restitution amount of $125,000. This is a *prima facia* error. See Docket #129.1, Sentencing transcript Exhibit "A" of Government's response letter. This error is admitted by the government in its unsworn response document. (*See* detailed response in Section 3 subsection IV below).
3) This error was preserved into the Court's "Judgment money book".
4) This error conveyed to the Docket as unnumbered item PRIOR to docket number 68 as shown here in Exhibit 6,
5) This error was immortalized to the governments' original Lien filed November 24, 2009, for $125,000. See Docket #129.3, Exhibit C of Government's document.
6) The office of Financial Investigation billed KARRON and was seeking to recover against this faulty lien of $125,000 against KARRON for eight (8) years. See Exhibit 7 and 8.
7) A number of FOIA requests to recover the contemporaneous billing documents have been stonewalled by the EOUSA. See Exhibit 9
8) A meeting was called by the government. During oral pre-conference negotiations, it appeared that the government was aware of many errors, disclosed and undisclosed. This included issues with the collateral civil judgment for four Million dollars against KARRON was abandoned without notification to KARRON. See Exhibit 8
9) After KARRON started a campaign to obtain new evidence by FOIA disclosure requests, an amended lien was filed July 26, 2016 without any of the required notification to KARRON,

some 8 years after the Amended Judgment was docketed. See Docket #129.5, Government Exhibit D

10) In a recent (February 2017) real estate transaction involving KARRON's inheritance, the buyer's title company did not acknowledge the amended lien but used the Original Lien. See Exhibit 10. The title company report reported on only two federal liens out of the 4 liens total. The pair of liens consists of the Original Lien and an associated IRS Tax Lien predicated upon the Original Judgment.

11) The time for fixing these errors by the government has long since passed. NYS Lien Law gives a period of months to amend a lien. Rule 60 gives a period of a year. All the applicable state and federal law says the time to amend and repair has long since passed.

## 3. Issues raised by the government's unsworn document.

The government's unsworn, incorrectly styled memorandum of law was rejected by the Court ECF Clerk on October 4. The clerk asked the government attorney to resubmit their papers on the docket. This caused the defendant to make a good faith assumption that the government would be resubmitting its papers. This delayed KARRON's the orderly and timely composition and professional editing and review of a formal reply pending the Governments' corrected answer. The government did not resubmit as of October 18, 2017, the defendants' deadline to make an answering submission. Further, on October 18, 2017, the defendant received a misaddressed paper copy postmarked October 4. This revealed the government's bad faith . The government had no intention of complying with the Court's request to resubmit its response document by mailing a paper copy of the original rejected response to the defendant KARRON on the same day it was notified of deficiencies in its submission. By mis-addressing the paper post office mail to KARRON, the government intentionally slowed down its paper notification obligation to KARRON, and possibly abrogated its obligation to notify parties of its correspondence with the court. This failure to make a timely and effective mail notification on the paper was made after the government declined to respond to KARRON's email to the government attorney GREENWOOD stipulate admission of KARRON's for ECF access from the court. This is after GREENWOOD was making use of ECF to respond to KARRON's motion papers. Further, On October 17, the day prior to KARRON's court ordered briefing schedule, KARRON received notification that its relevant FOIA requests were being consolidated and would be further delayed (see Exhibit 10). All this contributed to the governments sandbagging of the pro se Defendant KARRON in bad faith.

The odd procedural circumstance of how the government's answering argument was miscommunicated maybe construed in two ways. Either the letter was submitted in willful disregard of the court's request to resubmit. The letter can be liberally construed as some kind of informal answer letter. Or, this communication was an inappropriate *ex-parte* communication to the court and unresponsive to the court's briefing schedule order. If so, the court would have grounds to reject this letter, which would put the government in default. That would leave KARRON's motion unopposed.

The submission of this sworn declaration of fact and law is not to be construed in any way to validate the governments' submission that is in contravention of local and Federal Criminal and Civil motion practice rules.

## I. Government Misrepresentation of Point of Fact ONE.

The Government makes the following statement in the Discussion section. The statement gives the false impression that the government properly obtained a valid amended Notice of Lien. The government fails to mention three crucial, verifiable elements that change everything.

> Discussion: [...] The [KARRON] Motion proceeds on the **premise that the Original Judgment is "void"** and that, as a result, the Original Notice of Lien relying on the Original Judgment is likewise void. The Motion misses the point. **Crucially, after the Amended Judgment was issued, the Government filed an Amended Notice of Lien in the amount of $120,000.** [Section II, Discussion, Page 3, Paragraph 3] **[Emphasis Added]**

This discussion elides(omits) two important points. The second boldfaced whopper is: **"the government filed an amended Notice of Lien in the amount of $120,000"** EIGHT (8) years too late - in July of last year (2016) after KARRON filed various FOIA requests to investigate this matter. (*See* Exhibit 9).

The government statement above is analogous to the iconic aphorism of the farm hand who truthfully reports to his farmer-employer that he closed the gate to the stables but neglects to mention that WHEN he closed the gate all the horses were long gone and lost. The stable hand was not lying when he says he closed the gate but cannily refused to admit responsibility for the lost horses. The aphorism is so well known its specific origins are beyond the scope of this argument.

KARRON sold a share in KARRON's mother's house. The closing was in February of this year (2017). The buyer's title insurance company diligently researched a full lien and tax report on KARRON and the property. The title insurer title report contained a reference to two federal liens. *See* Exhibit 11. The title insurer ignored the Amended Lien filing and escrowed funds for the Original Lien, and for a Federal Tax Lien. The Amended Lien was null and void without its intended effect. One can only surmise that the buyer's title insurer knowingly rejected the government's Amended Lien. That the amended lien obtained 8 years too late is not the point of this lawsuit and is a material error for the government, not the defendant here. That the amended lien is nullified by being too late is a legal issue that is beyond the scope of this lawsuit.

The first boldface phrase omits the legal reasoning that is the foundational argument of this motion. The Original Judgment is nullified by the Amended Judgment. There can be no rational argument in logic or law refuting that fact. By the nullification of the Original Judgment, the

Original Judgment is there for void. This lawsuit seeks the courts recognition of this fact by having that original nullified judgment vacated and original nullified lien set aside.

## II. Misrepresentation Point of Fact TWO.

> Discussion: [...] Further, as documented in the Petitioner Payment History [Exhibit E], the Government has **correctly calculated the Petitioner's total principal liability for restitution and the $100 special assessment as $120,100** – as ordered by Judge Patterson in the Amended Judgment [Section II, Discussion, Page 3, Paragraph 3] **[Emphasis Added]**

Contemporaneous billing and email prior to the filing of the Amended Lien show payments applied against an initial balance of $125,000, by the governments own admission in Exhibit 7. As late as April 16, 2016, the government financial investigator requested KARRON appear for a desk audit, citing the Original Judgment and Lien balance of $125,000 (See Exhibit 7 and 8). After that, the government changed or surreptitiously corrected its records to apply KARRON's payments not against the original judgment balance of $125,000 but against the amended $120,000 balance. Government Exhibit E is misleading. There are no dated running balances, and Government Exhibit E does not reflect the balance history of the application of KARRON's payments. Original billing invoices submitted to KARRON, which are no longer in KARRON's possession (See Exhibit 7 and 8), will confirm this issue. Further discovery under Rule 16 of the missing contemporaneous billing and records over the past 9 years will confirm the government error.

## III. Misrepresentation Point of Fact THREE

> Discussion: [...] The **Petitioner is simply incorrect** when the Petitioner claims that the Government has "continued to invoice and reference the Original Judgment in the amount of $125,000" and "has ignored the Amended Judgment." (*See* Dkt. 119 at 1). [Section II, Discussion, Page 3, Paragraph 3] **[Emphasis Added]**

The discovery under Rule 16 of the original invoices and contemporaneous records during the 9 years since the government's award of the KARRON judgments will establish the facts of this matter.

## IV. Admission of error and inappropriate derision.

> Discussion:[...] Likewise, the Petitioner's request for Rule 16 discovery has no basis. The criminal case against the Petitioner has long since been resolved. Federal Rule of Criminal Procedure 16 simply does not apply to the Motion. In any event, no discovery is appropriate here. The Motion reflects nothing more than the Petitioner's latest, futile attempt to attack the criminal judgment, restitution order, and resulting lien against the Petitioner. As it was entitled to do, the Government properly obtained a lien based first on the Original Judgment and then, when that judgment was amended, **obtained a lien based on the Amended**

Judgment. Similarly, **while the Original Judgment in one instance <u>listed an incorrect, higher restitution amount than was ordered by Judge Patterson</u> and that was otherwise listed in the Original Judgment<u>, that error</u> was corrected in the Amended Judgment**. Likewise, while <u>the Clerk's ledger and docket entry for the Original Judgment reflected the improper restitution amount of $125,000</u>, the Petitioner's Payment History with the Government properly reflects a total principal liability for restitution and special assessment of $120,100. [Section II, Discussion, Page 3, Paragraph 4 [Emphasis Added]

As requested above, the government should simply present the petitioners billing and payment records which will document the continuing erroneous $125,000 judgment and lien.

## V. Let the court clarify the record.

Conclusion. As explained above, the Motion is **based on a fundamental misstatement of the facts** and represents only the latest, futile attempt by the Petitioner to attack a valid judgment and resulting lien. The Motion is meritless and should be denied. [Section III, Conclusion, Page 4, Paragraph 1 [**Emphasis Added**]

The merits of this motion are a colorable claim for the court to vacate a void judgment and derived Lien. The facts of the claim cannot be ignored or denied by the government in discovery and interlocutrices. For this reason the facts must be elicited by order by the court to address facts to be grudgingly admitted by the government in denial. The government has not raised any direct defense as to the validity of the Original Judgment argument or facts. The motion is not frivolous because KARRON can state a claim (void judgment) for relief (vacate judgment). Bland unsupported admonishment and misrepresentation of facts by unsworn statements by the government is not a responsive answer and does not serve the court's consideration of facts and law.

The fundamental true fact is that the governments' correction was not addressed until 2016. It is the government who is making fundamental misstatements of facts(lying) and ignoring (obfuscating) the relevant law and defense argument. If the government is so confident in the factual predicate of its argument, why it is resisting and sandbagging KARRON's FOIA requests (*See* Exhibit 9 and 10), as well as this motion for criminal discovery under Rule 16?

## 4. Why was the original judgment not valid?

The foundation of KARRON's criminal conviction and collateral civil attack has thoroughly rotted out over the years. KARRON's criminal conviction and civil death is a significant

violation of constitutional rights of due process and vigorous unconflicted legal representation. This motion seeks the release of improperly held funds.

As is well known by the prosecution and may be news to the new responding Assistant US Attorney GREENWOOD, the case against KARRON was brought by two disgraced former federal case agents Rachel ONDRIK and Kirk YAMATANI. These special agents and auditor Belinda RILEY, as well as prosecutor Steve KWOK, would go on to win medals and promotions based on KARRON's conviction – while KARRON was in prison in 2009.

Then, in a stunning turn of events, suitable for a fantastic crime novel, KARRON's two lead case agents ONDRIK and YAMATANI were arrested after years of investigation by their boss, the then Department of Commerce Inspector General Todd ZINSER. The targeted pair of agents then started a retaliatory counter campaign against their boss ZINSER. That attempted retaliation included cajoling, convincing and suborning other Special Agent colleagues to bring false charges against their boss. This was an admitted attempt to pressure the IG and the FBI while the IG was attempting to bring charges against the soon to be disgraced agents. Because of the overwhelming body of evidence brought by the government, the two special agents abandoned their vindictive counterattack and took a guilty plea each. In their statements of admitted facts, the pair admits to systematic and knowing falsification of sworn government papers. The period of admitted lying commenced while KARRON was serving KARRON's sentence in prison in 2009 for being setup by these two for essentially the same crime the two case agents admitted to. Contrary to the disgraced agent's statement of admitted facts, the evidence compiled over the years shows the former special agents habitual and systematic lying reached back to the very beginning of the KARRON case in 2004 icon and many others.

The release of the encumbered funds by the government, in this case, is required to fund KARRON's attorney in the protection of KARRON's constitutional rights to due process and *habeas* or *corum nobis* review. The denial of these funds hamstrings KARRON's post-conviction challenge predicated on significant changes of circumstances, new evidence not available at the time of trial, appeal, and first habeas challenge.

I declare under penalty of perjury that the foregoing facts are true and correct.


Dated:
      New York, New York


Signed

Daniel B. KARRON
Defendant
*Pro Se*
e-Mail:
voice: (516) 515 1474
Fax: +1 516 234 7758
Care of Aldine Publications, LLC
1636 Third Avenue
Suite 300,
New York, New York 10128

5. Affirmation of Service

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-V.-

DANIEL B. KARRON
Defendant

07-cr-00541 (PKC)
AFFIRMATION OF SERVICE

I, DB KARRON, the Defendant declare under penalty of perjury that I served a copy of this second memorandum of law and declaration if facts to the court and all listed below by priority mail and hand delivery and email where available.

The Honorable Kevin P. Castel
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Courtroom 11D
New York, New York 10007

Chambers Phone: (212) 805-0262
Deputy Phone: (212) 805-0131
Fax: (212) 805-7949

Jessica Greenwood
LEAD ATTORNEY
ATTORNEY TO BE NOTICED
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007

Voice: 212-637-2200
Voice Fax: 212-637-2527
Email: Jessica.Greenwood@usdoj.gov

Chi T. Steve Kwok U.S. Attorney's Office, SDNY (St Andw's)
LEAD ATTORNEY
ATTORNEY TO BE NOTICED
One St. Andrew's Plaza
New York, NY 10007

Voice (212)637-2415

Fax: (212)637-2937
Email: steve.kwok@skadden.com


Signed

*[signature]*

Daniel B. KARRON
    Defendant
    *Pro Se*
    e-Mail: drdbkarron@gmail.com
    voice: (516) 515 1474
    Care of Aldine Publications, LLC
    1636 Third Avenue
    Suite 300,
    New York, New York 10128

    Dated Wednesday, October 25, 2017

6. Exhibits

# Exhibit
# 1



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

May 29, 2013

**BY FEDEX**

Daniel B. Karron, Ph.D.
348 East Fulton Street
Long Beach, NY 11561

Re: **United States** v. **Daniel B. Karron**
**07 Cr. 541 (RPP)**
**11 Civ. 1874 (RPP)**

Dear Dr. Karron:

We understand you are not, or are no longer, represented by counsel in the above matters. We are accordingly addressing this letter to you directly. You may wish to consult with counsel regarding what significance, if any, the following information may have for the above proceedings.

Specifically, at the time of your prosecution, Rachel Ondrik and Kirk Yamatani were Special Agents of the United States Department of Commerce, Office of Inspector General. They participated in that capacity in the investigation of your case and assisted us in its prosecution.

Since that time, on April 30, 2013, Rachel Ondrik and Kirk Yamatani each pled guilty to one count of Government voucher fraud, a Class A misdemeanor, in violation of Title 18, United States Code, Section 1018. The cases were prosecuted by the United States Attorney's Office for the District of Maryland. See United States v. Rachel Ondrik, 13 Cr. 148 (CBD) (D. Md.), and United States v. Kirk Yamatani, 13 Cr. 149 (CBD) (D. Md.). Copies of the charging instruments, plea agreements, and statements of facts are enclosed.

The Department of Commerce Office of Inspector General ("OIG") and the Federal Bureau of Investigation ("FBI") have advised us that they did not uncover any evidence that the conduct described in the enclosed court documents predated the charged offense period

Daniel B. Karron
May 29, 2013
Page 2

of 2009 through 2011. Accordingly, no evidence was uncovered that any such conduct affected the investigation of your case.

Very truly yours,

PREET BHARARA
United States Attorney

By: _____
Chi T. Steve Kwok
Christian R. Everdell
Assistant United States Attorneys
(212) 637-2415/2556

Enclosures

2

# Exhibit

# 2

FILED ___ ENTERED
___ LOGGED ___ RECEIVED

APR 3 0 2013

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY___ DEPUTY

## ATTACHMENT A - STATEMENT OF FACTS: RACHEL ONDRIK

*The United States and the Defendant agree that if this case proceeded to trial, the United States would prove the following facts below beyond a reasonable doubt. They agree that these are not all of the facts that would be proved if this case proceeded to trial.*

Defendant RACHEL ONDRIK ("ONDRIK") was a Special Agent of the United States Department of Commerce ("DOC"), Office of the Inspector General ("OIG"). In this role, she was covered by the United States Office of Personnel Management's series 1811, which sets forth requirements for positions that supervise, lead, or perform work involving the planning, conducting, or managing of investigations related to violations of federal criminal laws. Work in this series requires knowledge of criminal investigative techniques, rules of criminal procedures, laws, and precedent court decisions concerning the admissibility of evidence, constitutional rights, search and seizure, and related issues in the conduct of investigations.

ONDRIK's first duty station was in Washington, D.C. In 2007, she transferred to the DOC OIG office in Atlanta, Georgia. In 2009, she returned to Washington, D.C. where she continued to work for DOC OIG. During and after this change of station from Georgia to Washington, D.C., ONDRIK defrauded and attempted to defraud the United States and the DOC by submitting false writings and making material misrepresentations to the DOC while seeking reimbursement for relocation expenses. ONDRIK submitted these false writings to National Institute of Standards and Technology ("NIST") Office of Financial Resource Management, a division of the DOC located in Gaithersburg, Maryland, which processed DOC OIG's travel claims.

On or after July 7, 2009, ONDRIK applied for and was granted relocation benefits from the DOC because her transfer from Atlanta to Washington, D.C. was determined to be in the government's interest. ONDRIK's authorized relocation benefits included reimbursement for a househunting trip, *en route* travel, and temporary quarters subsistence expenses ("TQSE"). Approval of these reimbursements was contingent on ONDRIK's adherence to the Federal Travel Regulation.

Contemporaneous e-mail communications between ONDRIK and Kirk Yamatani, a fellow DOC OIG agent also relocating from Atlanta to Washington at the same time, show that both agents were aware of the rules and regulations governing their relocations and reimbursements for related expenses, yet both ONDRIK and Yamatani nevertheless attempted to secure payment from the DOC in amounts exceeding that authorized by the governing regulations. For example, in an e-mail exchange on May 6, 2009, Yamatani and ONDRIK agreed that the Federal Travel Regulation permitted a certain method of reimbursement, known as the "fixed rate" method, for a period of time limited to 30 days, with no extensions permitted. Although Yamatani and ONDRIK agreed that their supervisors at OIG were unaware of the temporal limitation on this entitlement, they agreed to conceal these limitations from DOC OIG and to seek reimbursements in excess of what the regulation authorized.

1

Further, on or about August 20, 2009, ONDRIK knowingly submitted a false travel voucher seeking reimbursement for a ten-day househunting trip she claimed that she and her husband took to the Washington, D.C. area between July 22 and July 31, 2009.  On the voucher, ONDRIK claimed that they departed their Acworth, Georgia, home on the morning of July 22, 2009, drove their personal vehicle to Rockville, Maryland, and then later returned by car to Georgia on July 31, 2009.  In the voucher for this househunting trip, ONDRIK claimed reimbursement for various expenses, such as lodging, meals, mileage.  In fact, ONDRIK did not make a househunting trip during this period, nor did the actual househunting trip she took earlier in July last ten days, nor did she incur the claimed expenses.  ONDRIK nonetheless knowingly submitted the voucher containing that false statement to DOC OIG and NIST claiming reimbursement of $4058.75.

On or about August 10, 2009, ONDRIK submitted false travel vouchers seeking reimbursement of $1,531 for her official en route travel to her new duty station, and on or about September 26, 2009, ONDRIK submitted a false TQSE voucher claiming $33,973.50 in expenses, more than $20,000 over what the Federal Travel Regulation allowed.  In ONDRIK's en route voucher, she claimed that she and her family departed their Georgia home on August 5, 2009 at 8:00 am and drove their personal vehicle to Roanoke, Virginia, where they spent the night.  ONDRIK then claimed to have driven the rest of the trip to Clarksburg, Maryland, the following day.  On her voucher, ONDRIK claimed reimbursement for meals, hotel, mileage, and "miscellaneous expenses."  In fact, ONDRIK and her family had traveled to Maryland on July 28, 2009, during the period she claimed they were househunting, and did not return to Georgia as her vouchers falsely claimed.  ONDRIK was aware that both vouchers contained false information when she completed them and submitted them to DOC OIG and NIST.  Altogether, ONDRIK submitted at least three false vouchers seeking reimbursement from the United States for $39,563.25.

When a NIST examiner reviewed ONDRIK's TQSE voucher, she realized the amount claimed was far in excess of ONDRIK's actual entitlements under the Federal Travel Regulation, denied it, and instead paid only the $10,815 to which ONDRIK was entitled.  ONDRIK, however, persisted in her claim for reimbursement in the higher amount, despite the fact that she knew that her claim exceeded the 30 day period authorized by regulations.  On several occasions between 2009 and 2011, ONDRIK reaffirmed the earlier false statements in her vouchers and made false statements regarding the circumstances of her claims for reimbursement, which constituted obstructive conduct.

2

Between June 2009 and February 2011, ONDRIK further committed several instances of time and attendance fraud against her agency. The actual loss to the United States that was the direct and proximate result of ONDRIK's knowing and intentional conduct was approximately $14,000.

I have read this statement of facts, and have carefully reviewed it with my attorney. I acknowledge that it is true and correct.

_4 - 30 - 13_
Date

_Rachel Ondrik_ (signature)
Rachel Ondrik

I am Rachel Ondrik's attorney. I have carefully reviewed the statement of facts with her.

_7 - 30 73_
Date

(signature)
Thomas Abbenante, Esq.

3

# Exhibit

# 3

Sign In | Register    Jobs | Real Estate | Rentals | Cars | Print Subscriptions | Today's Paper | Discussions | Going Out Guide | Personal Post | Videos

Politics | Opinions | Local | Sports | National | World | Business | Tech | Lifestyle | Entertainment | Jobs | More

# Federal Eye

Keeping tabs on the federal government



Archives      Follow:     Copying   Search The Washington Post

Comments    Reprints

# Former commerce agents plead guilty to fraud against inspector general's office

By Josh Hicks, Published: May 1, 2013 at 6:00 am   E-mail the writer

13    Comments    Like 25    Tweet 5    More

**Eye Opener**    *Updated at 8:30 p.m.*

Two former special agents for the inspector general's office of the Commerce Department who accused superiors of wrongdoing pleaded guilty Tuesday to filing false expense claims and ducking hours they didn't work, according to the Justice Department.

Rachel Ondrik, 35, of Frederick, and Kirk Yamatani, 38, of Ashburn, sought payments for more than $36,000 each in false relocation expenses, according to their plea agreements.

They also committed time and attendance fraud, the Justice Department said. As part of their pleas, Ondrik and Yamatani agreed to probation and $42,000 each in fines and restitution to the government. Sentencing is set for June 19.

Commerce Department Inspector General Todd Zinser said Tuesday that the former agents waged a smear campaign against his office while they were under investigation.

"In addition to the fraud perpetrated on the U.S. taxpayers, these now former employees also retaliated by carrying out a destructive campaign of disparagement and false allegations against the Office of the Inspector General," Zinser said in a statement.

Commerce Inspector General Todd Zinser. (Commerce Department Inspector General's Office)

The former agents filed complaints against his office to the Commerce secretary, the FBI, the U.S. Attorney's Office, and the Office for Civil Rights, according to documents obtained by The Washington Post.

The Office of Special Counsel is investigating Zinser for allegedly blackmailing four Commerce agents into signing nondisclosure agreements that kept them from talking to

investigators and the public about undisclosed claims of wrongdoing by the inspector general's office.

The Merit Systems Protection Board lifted the gag agreement in December with a stay order through Jan. 14.

The Office of Special Counsel has not sought an extension of the stay because Zinser retracted the nondisclosure agreements, according to OSC spokesman Adam Miles.

The four agents involved in that case accused Zinser of threatening to place negative performance reviews in their personnel files unless they agreed not to speak out against the inspector general's office, according to the Office of Special Counsel.

"It was all a manipulated, false narrative," Zinser said of the accusations.

The inspector general added that Ondrik and Yamatani "might be in the same boat, or they could be the same individuals" as the agents who took their claims to the counsel's office.

The attorneys who represent those two agents issued a joint statement Wednesday criticizing Zinser for suggesting that their clients might be connected with the whistleblower case.

Tom Abbenante represents Ondrik; Steven Levin represents Yamatani.

"Mr. Zinser's efforts to absolve himself of any of his own alleged wrongdoing by connecting these two matters in a press release was inappropriate, to say the least," the attorneys said. "It is our understanding that Mr. Zinser's alleged misconduct against other special agents is a separate and unrelated matter."

The Office of Special Counsel said Wednesday that Ondrik and Yamatani were not among the four agents involved in the whistleblower case and that the agency is still investigating possible violations by Zinser.

"OSC's stay request was based on evidence gathered from several witnesses and was not brought on behalf of the two former special agents who entered into a plea agreement yesterday," Miles said Wednesday.

"OSC encourages all parties to respect the integrity of the investigative process and has no further comment at this time."

*For more federal news, visit The Federal Eye, The Fed Page and Post Politics.*

*To connect with Josh Hicks, follow his Twitter feed, subscribe to his Facebook page or e-mail josh.hicks@washpost.com.*

# Exhibit
# 4

UNITED STATES DEPARTMENT OF COMMERCE
Office of Inspector General
Washington, D.C. 20230

April 29, 2015

VIA E-MAIL

D B Karron
348 East Fulton Street
Long Beach, NY 11561
drdbkarron@gmail.com

RE: FOIA Request No. DOC-OIG-2015-001023

Dear Dr. Karron:

This letter is regarding your Freedom of Information Act (FOIA) request, tracking number DOC-OIG-001023 (you have identified this request as request "DoC OIG FOIA XXXXXV(55)" for your own tracking purposes), received by the Department of Commerce, Office of Inspector General (OIG) on April 2, 2015, in which you seek, as clarified April 2, 2015, "a copy of a [named OIG employee's] 2009 DOC Bronze Medal Award citation and details, to include what acts, events, or work product the award was awarded for."

A search of records maintained by the OIG has located four (4) pages responsive to your request. We have reviewed these pages under the terms of FOIA and have determined that two (2) pages may be released to you in full. One (1) page must be partially withheld under FOIA exemption (b)(6), 5 U.S.C. § 552(b)(6), which protects information in personnel, medical or similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. One (1) page has been partially withheld because it contains portions that are not responsive to your request. Copies of the four pages are enclosed with the relevant withholdings noted.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of FOIA. See 5 U.S.C. § 552(c) (2012 & Supp. I 2013). This response is limited to those records that are subject to the requirements of FOIA. This is a standard notification to all OIG requesters and should not be taken as an indication that excluded records do, or do not, exist.

You have the right to appeal this partial denial of your request. An appeal must be received within thirty (30) calendar days of the date of this response letter by the Counsel to the Inspector General, U.S. Department of Commerce, Office of Inspector General, Office of Counsel, Room 7898C, 14th and Constitution Avenue, N.W., Washington, D.C. 20230. Your appeal may also be sent by e-mail to FOIA@oig.doc.gov, by facsimile (fax) to 202-501-7335, or by FOIAonline, if you have an account in FOIAonline, at https://foiaonline.regulations.gov/foia/action/public/home#.

The appeal should include a copy of the original request and this initial denial letter. In addition, the appeal should include a statement of the reasons why the records requested should be made



# Bronze
## *Medal Awards*





**Rachel Ondrik**
**Belinda Riley**
**Kirk Yamatani**

For exceptional leadership in directing and working on a
multidisciplinary team, resulting in the prosecution of a significant
criminal grant fraud case.

The Department's Bronze Medal is
the highest honorary award that can be granted by the
Inspector General. Employees are selected for
significant contributions, unusual initiative,
or continued high performance
in carrying out the mission of OIG.



**UNITED STATES DEPARTMENT OF COMMERCE**
**The Inspector General**
Washington, D.C. 20230

November 17, 2009

Belinda Riley

████████████████

Dear Belinda:

On behalf of all your colleagues here at OIG, please accept my congratulations on being chosen to receive the Department of Commerce Bronze Medal. The Bronze Medal is the highest award Commerce agencies can bestow on their employees. It is given to the select few whose exemplary achievements directly enhance agency or Department operations.

You displayed exceptional leadership in working on a multidisciplinary team that resulted in the prosecution of a significant criminal grant fraud case.

Thank you for your valuable work and your dedication to the mission of OIG, and again, congratulations on receiving this well-deserved award. My best wishes for your continued success.

Sincerely,

Todd J. Zinser



# Exhibit

# 5

*make 3+ copies*
*Send Original to*
*Rubenstein*

## ASSIGNMENT AND SETTLEMENT AGREEMENT

*United States v. Daniel B. Karron*
Indictment No. 07-cr-00541 (RPP)

I, DANIEL B. KARRON a/k/a Dunne Karron of #60001054 B3 FEDERAL PRISON CAMP ALDERSON WV 24910

Certify that I owe the law firm of Rubinstein & Corozzo, LLP, a balance of

$235,000 ("Two-hundred thirty-five thousand") for legal services rendered on my

behalf in *United States v. Daniel B. Karron*. In consideration of this debt, I agree to

assign all right, title, and interest, which I have or may acquire in the estate of my

beloved mother, Marian Karron, to the law firm of Rubinstein & Corozzo, whether

such interest shall vest by will or intestacy.

Dated: May 27, 2009

DANIEL B. KARRON

Sworn to before me this
27 day of May , 2009

Notary Public



OFFICIAL SEAL
STATE OF WEST VIRGINIA
NOTARY PUBLIC
TINA WICKLINE
FEDERAL PRISON CAMP
DEPARTMENT OF JUSTICE
ALDERSON, WV 24910
My Commission Expires [...]

# Exhibit

# 6

| 10/23/2008 | | Judgment entered in money judgment book as #08,1970 as to Daniel B. Karron in the amount of $ 125,100.00, re: 68 Judgment. (dt) (Entered: 10/27/2008) |
| --- | --- | --- |

# Exhibit

# 7



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

Financial Litigation Unit
86 Chambers Street
New York, New York 10007

April 14, 2016

Daniel Karron, a/k/a Diane Karron
10 Pheasant Lane
New Milford, CT 06776

> Re: United States v. Daniel Karron
> Court No.: 07 CR 00541-01 (RPP)

Dear Ms. Karron:

This office is reviewing your debt to the United States, in the amount of $125,000.00. To do this it is necessary to have a personal interview with you.

Therefore, we have scheduled an appointment for you on May 10, 2016, at 10:00 a.m. at the United States Attorney's Office, 86 Chambers Street, 3rd floor, New York, New York 10007 at which time we will review your case.

You are required to furnish the documents listed below at the time of the interview. Failure to do so will result in the issuance of a subpoena duces tecum for any or all of the following documents.

1.  Copies of your pay stubs, receipts, 1099 earning statements, W-2 forms, disability benefits, unemployment benefits, welfare re-certification letter and social security statement of benefits for the last 3 months.

2.  Federal income tax records and returns with all schedules for the last 3 years.

3.  Business records for the present calendar year which reflect assets, liabilities, gross receipts and expenses for any sole proprietorship, partnership or corporation in which you or your spouse has any interest.

4.  Bank statements for the past three (3) months from all banks or other financial institutions, where you, or your spouse, have an account of any kind.

5.  All trust agreements in which you, or your spouse, are a named trustee or beneficiary.

# Exhibit

# 8

 **Gmail**

Dr DB Karron <dbkarron@gmail.com>

## confirming 26 May
9 messages

---

**Dr DB Karron (PhD)** <drdbkarron@gmail.com>
Reply-To: drdbkarron@gmail.com
To: maria.cotto@usdoj.gov
Cc: "Ronald Rubinstein, Esq" <ronald.rubinstein@gmail.com>

Tue, May 10, 2016 at 11:15 AM

Thank for calling.

Before I launch into anything, please acknowledge this email.

I will memorialize our conversation then.

I am surprised that the 4M judgement was dismissed.
Thank you for your research into this.

Sincerely,

Dr. Karron

---

"D B Karron, Ph.D. a/k/a Dr. K" <drdbkarron@gmail.com>
<karron@casi.net> skype: drdbkarron
+1 (516) 515-1474 (will find me)
+1 (917) 674-0828 (voice and cell texting, SMS)

---

**Cotto, Maria (USANYS)** <Maria.Cotto@usdoj.gov>
To: "drdbkarron@gmail.com" <drdbkarron@gmail.com>
Cc: "Ronald Rubinstein, Esq" <ronald.rubinstein@gmail.com>

Tue, May 10, 2016 at 11:39 AM

Mr. Karron,

This email will confirm our scheduled meeting for May 26 at 11 am.

I must clarify that the civil judgment was returned to the agency for collection.

In other words, the DOJ is not enforcing collection, but the original agency may.

I look forward to our meeting.

Regards,

Maria A. Cotto

Financial Investigator

U.S. Attorney's Office – SDNY

Financial Litigation Unit

# Exhibit

# 9

Dr. D B Karron (Ph.D.)
1636 3rd Ave, Apt 300
New York, NY 10128
e-mail: drdbkarron@gmail.com
Preferred means of communication is e-mail
Voice: (516) 515 1474

Friday, September 1, 2017

By E-mail only to USAEO.FOIA.Requests@usdoj.gov,
            Sonja.Whitaker@usdoj.gov,
            maria.cotto@usdoj.gov,
            Jessica.Greenwood@usdoj.gov

Sonja Whitaker
Freedom of Information and Privacy Staff
Executive Office for United States Attorneys
Department of Justice
Suite 7300, Bicentennial Building
600 E Street, N.W.
Washington, DC 20530-0001
Phone: (202) 252-6020 Email:USAEO.FOIA.Requests@usdoj.gov

CC:
Jessica Greenwood
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
212-637-2200
Fax: 212-637-2527
Email: Jessica.Greenwood@usdoj.gov

Cc:
Ms. Maria A. Cotto
Financial Investigator at SDNY U.S. Attorney's Office,
US Department of Justice
86 Chambers Street
New York, NY 10007
Phone: (212) 637 2806, maria.cotto@usdoj.gov

CC:
Julie Ann Weiblinger
Receivables Group
National Institute of Standards and Technology
100 Bureau Drive
Gaithersburg, MD 20899
E-mail: julie.weiblinger@nist.gov
Phone: (301) 975-2173


RE: "New Freedom of Information Act Request **DoJ EOUSA FOIA 11 XI**"

Dear Ms. Sonja Whitaker;

This letter is a new FOIA request, as per your letter appended in Exhibit 1. All requested corrections are made and resubmitted with this request. This request consists of four (4) parts/requests. All POC(s) to obtain these documents are CC'ed and provided to assist your research efforts. Please note my new address above.

REQUEST 1:

A copy of the Department of Justice, Financial Litigation Unit billing and account history and balances in its efforts to collect the judgment rendered against me in the case of USA-v-KARRON-07-CR-541-RPP.

Department of Justice Account Number: 2009A07841/001,

REQUEST 2:

A copy of the Department of Justice, Financial Litigation Unit Billing, Invoices, and balances Case: USA v KARRON 08-cv-10223

Department of Justice Account Number: 2013A67687/001,

REQUEST 3:

A copy of the transmittals of all of the payments I have made to the Clerk of the Court, Southern District of New York to NIST Receivables Group attention Julie Ann Weiblinger Receivables Group, as specified in the two Judgment against myself.

Payments were made while I was in prison under the Inmate Financial Responsibility Program Act of 18 CFR 545(b), payments extorted while on EDNY

pg. 2

probation, and payments made while under civil supervision in the case of USA-v-KARRON-07-CR-541-RPP. Documentation of these payments from the Department of Justice forwarded to the NIST Receivables group on my case as ordered by the court in the judgment, Exhibit 4

REQUEST 4:

A copy of the Department of Justice, Financial Litigation Unit E-mail, memos, and documentation regarding the return or referral of my case to originating agency as mentioned and memorialized in Exhibit 2, Page 4

Mr. Karron,

This email will confirm our scheduled meeting for May 26 at 11 am.
I must clarify that the civil judgment was returned to the agency for collection.
In other words, the DOJ is not enforcing collection, but the original agency may.
I look forward to our meeting.

Regards,

Maria A. Cotto
Financial Investigator
U.S. Attorney's Office – SDNY
Financial Litigation Unit
86 Chambers Street
New York, NY 10007
Tele. No.: 212-637-2806
Fax No.: 212-637-2717

Department of Justice Account Number: 2013A67687/001, Case: USA v KARRON 08-cv-10223

## LOCATION OF RECORDS and PERSON of CONTACT(POC)

In your request for corrections, you asked in item 2:

> 2. [X] The files and records of United States Attorneys are maintained in over one hundred
> separate offices throughout the United States. **Please identify the specific United States
> Attorney's office(s), where you believe records may be located.** This would be primarily
> the district(s) in which a prosecution or litigation occurred. [ **Emphasis Added** ]

I believe the records I seek are in the care and custody of Ms. Maria Cotto at the Southern District of New York, Financial Litigation Unit on Chambers Street in New York, New York as CC'ed above. This is the district where I was prosecuted.

My POC on these matters over these 9 years is Ms. Maria Cotto, who is CC'ed on this FOIA request. The NIST side of this request is to Ms. Julie Ann Weiblinger, Receivables Group National Institute of Standards and Technology Phone: (301) 975-2173

### DECLARATION OF IDENTITY

I am the defendant in the above case.

A copy of executed FORM DOJ-361, notarized, as previously submitted is appended as Exhibit 3. This identification certification can serve for all future FOIA disclosures that I will make through the Department of Justice.

Thank you for your anticipated fruitful cooperation in this research task.

Sincerely,

D B Karron
*Requester*

# Exhibit

# 10



**U.S. Department of Justice**

Executive Office for United States Attorneys

Freedom of Information and Privacy Staff

*Suite 7300, Bicentennial Building*
*600 E Street, NW*
*Washington, DC 20530*

*(202) 252-6020*
*FAX (202) 252-6047*

October 17, 2017

Dr. D.B. Karron
c/o Aldine Publications
1636 3rd Avenue, Suite 300
New York, NY 10128
dbkarron@gmail.com

FOIA Nos.: EOUSA-2017-001301 and EOUSA 2017-003306
Submitted Date: 04/21/2017 and 08/14/2017 and
Subject of Request: Self

Dear Dr. D.B. Karron:

The Executive Office for United States Attorneys (EOUSA) has received your Freedom of
Information Act/Privacy Act request. A check of our files indicates you have submitted and
been assigned several FOIA numbers in which you sought the same information. Since your
request is being processed under EOUSA-2017-001322, we are closing EOUSA-2017-001301
and EOUSA 2017-003306 as a duplicate requests. Please cite EOUSA 2017-001322 in any
future correspondence you send to this office.

EOUSA has received an exceedingly heavy volume of Freedom of Information Act/Privacy
Act requests and therefore, this office will be unable to respond to your request within the time
limits established by the Freedom of Information Act. Please be assured, however, that your
request is being handled as equitably as possible and that all documents which can be released
will be made available at the earliest possible date.

Sincerely,

Kevin Krebs
Assistant Director

Form No. 000 – 2/16

# Exhibit

# 11

FTWO-31
(Rev 11-97)

# First American Title Insurance Company
## of New York

### DEPOSIT AND ESCROW AGREEMENT

DATED _2 Vol_ ____ IN THE YEAR ____ TITLE NO. _AL 108687N_

First American Title Insurance Company of New York, as Depositary, acknowledges receipt from the undersigned Depositor of the

sum of _9600.⁰⁰_ ____ Dollars ($____) (the "Deposit") by

(check one): Cash ☐   Cashier Check ☐   Certified Check ☐   Personal Check ☐

upon the following terms, covenants and conditions, including those set forth on the reverse side hereof which terms, covenants and conditions hereby made a part of this Deposit and Escrow Agreement ("Agreement") as if fully set forth herein, and Depositary is authorized as follows:

A. TO PAY, SATISFY, OR OTHERWISE DISPOSE OF THE FOLLOWING LIENS OR OTHER CHARGES AFFECTING SAID PREMISES, OR OF THE DEPOSIT, INCLUDING INTEREST, PENALTIES, OTHER CHARGES AND ATTORNEYS' FEES, IF ANY:

```
C T
O O
M
P P
A E
N R
Y F
  O
  R
  M
```

B. TO HOLD THE DEPOSIT AS SECURITY FOR THE PRODUCTION BY DEPOSITOR TO DEPOSITARY ON OR BEFORE ____ IN THE YEAR ____ OF THE DISPOSITION OF RECORD TO THE SATISFACTION OF DEPOSITARY OF THE FOLLOWING:

```
D T
E O
P
O
S
I
T
O
R
  M
```

_HOLD DEPOSIT FOR_   _E  LIEN  PROOF THAT THE_
_ATTACHED PROVISION TO_   _TK  SALE  E  WILL PAID_
_PAID SAT BE E_   _OVER THE VEIL FEE OLD_

_UNTIL A VALID PAY OFF  LETTER  HAS  BEEN_
_RECEIVED SO THAT THE  DEPOSIT  CAN  BE  USED_
_TO  PAY  SAME_

AFFECTING PREMISES KNOWN AS _348 E.  FULTON  ST,  Long Beach_

Section ____ Block ____ Lot(s) ____ County ____ Village, Town or City ____

DEPOSITARY IMPOSES FOR THIS SERVICE A CHARGE IN THE AMOUNT OF $ _85.⁰⁰_

First American Title Insurance Company of New York

By: _Jean Meher_
(Signature of Company Representative)

AGREED TO:
_Daniel B. Karron_
Print Name of Depositor

_[signature]_
Signature of Depositor

Name, Address & Telephone Number of Depositor's Attorney
_Michael F. Mongelli II ESQ_   ← _SAME_
_41-07 162 ND ST  Flushing_   Print Name  Depositor
_11358_
Mail balance to (check one) Depositor ☐  Attorney ☐  Other ☐   _718-463-7333_

ALL REFUND CHECKS WILL BE PAYABLE TO THE ORDER OF DEPOSITOR.

NOTE TO CLOSER —
Where Deposit is made by a corporation obtain the following individual guaranty:
To induce Depositary to enter into this agreement, the undersigned guarantees the payment and the performance of all of the obligations of Depositor hereunder.

____   ____   ____
Witness   (See Reverse Side)   Signature

TITLE COMPANY COPY #1

Page 43 of 44



# American Land Services Inc.

6901 Jericho Turnpike, Ste. 210, Syosset, NY 11791
Phone: 516.921.4466 * Fax: 516.921.3433 * EMail: info@AmericanLandServices.com

## TITLE INSURANCE CLOSING INVOICE

| | |
|---|---|
| Title No.: AL108687N | Closing Date: 2/10/2017 at 12:30 PM |
| Applicant: Brendan P. Twomey, Esq | Phone Number: (516) 921-1956 |
| Reference: from Found | Fax Number: (516) 977-9598 |

Premise: 348 East Fulton Street, Long Beach, NY 11561 Section 59 Block 136 Lot 25, 26, 27, 28, 29 & 30
Owner(s): Abraham B. Karron, Amlee Karron Idan, Dr. Daniel B. Karron and Nathaniel Karron
Buyer(s): Summit Development & Management Corp
Other(s): Dana Karron

| CHARGE DESCRIPTION | BUYER(S) | SELLER(S) | LENDER | | TITLE POLICIES | |
|---|---|---|---|---|---|---|
| POLICY PREMIUMS: | | | | | Owners Policy: | $430,000.00 |
| owners Policy Premium | $1,882.00 | | | | Loan Policy: | |
| ENDORSEMENTS: | | | | | Sub. Loan Policy: | |
| | | | | | Additional Information | |
| RECORDING TAXES: | | | | | POLICIES: Fee Policy Only | |
| Transfer Tax New York State (TP584) | | $1,720.00 | | | PROPERTY TYPE IS RESIDENTIAL 1 OR 2 FAMILY ONLY (IMPROVED OR TO BE IMPROVED) | |
| RECORDING FEES: | | | | | CLOSER: Jack Maher | |
| Record Deed ( 5 pages includes RP-5217 Fee) | $500.00 | | | | | |
| Recording Service Charge ($50 per document) | $50.00 | | | | | |
| Nassau County Verification Fee ($365.00 per doc) | $365.00 | | | | | |
| *SALES  TAX* | *66.56* | | | | | |
| *ACRIS  PREP* | | *150.00* | | | | |
| OTHER CHARGES: | | | | | | |
| Bankruptcy Searches + | $150.00 | | | | | |
| Patriot Searches + | $150.00 | | | | | |
| Municipal Searches + | $450.00 | | | | | |
| Courier fee | $40.00 | | | | | |
| Federal tax liens (2) | | $600.00 | | | | |
| Escrow Service Charge | $95.00 | | | | | |
| 2016/17 School tax 1st half due 10/1/16 gd to 2/28/17 | $3,583.34 | | | | | |
| *2015/16  TAX  LIEN* | | *7208.74* | | BUYER(S) | $_____ | $_____ |
| 2017 County Tax 1st half due 1/1/17 gd to 2/28/17 | $842.75 | | | SELLER(S) | $_____ | $_____ |
| 2016/17 City Tax 1st half due 7/1/16 gd to 2/28/17 | $4,424.48 | | | LENDER | | $_____ |
| 2016/17 City Tax 2nd half due 1/1/17 gd to 2/28/17 | $2,872.46 | | | | | $_____ |
| 2017/12 School 2nd half due 2/15/17 | $6,239.22 | | | | | $_____ |
| 2016 County and 2015/16 School gd to 2/15/17 | $9,866.94 | | | TOTALS | $_____ | $_____ |

*3643.56 + 45,179.33 = ·  $48,822.89*

NOTICE: Title costs for this transaction may include charges for certain services not specified in the state approved Rate Manual and are provided by the Company at the request of your lender or attorney. The issuance of the title policy is not dependent upon the performance of such additional services. Certain costs may be listed separately on your final HUD settlement Statement and not included under line of Line 1101.

Dr. D B Karron (Ph.D.)
1636 3rd Avenue, #300
New York, New York 10128
e-mail: drdbkarron@gmail.com
voice: +1 (516) 515 1474

Wednesday, October 25, 2017, 14:00H

BY FAX, by United States Post Office, and by Hand Delivery

The Honorable Kevin P. Castel
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Courtroom 11D
New York, New York 10007
Chambers Phone: (212) 805-0262
Deputy Phone: (212) 805-0131
Fax: (212) 805-7949

CC:
Jessica Greenwood
LEAD ATTORNEY
ATTORNEY TO BE NOTICED
United States Attorney's Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
212-637-2200
Voice Fax: 212-637-2527
Email: Jessica.Greenwood@usdoj.gov


Chi T. Steve Kwok U.S. Attorney's Office, SDNY (St Andw's)
LEAD ATTORNEY
ATTORNEY TO BE NOTICED
One St. Andrew's Plaza
New York, NY 10007
Voice (212)637-2415
Fax: (212)637-2937
Email: steve.kwok@skadden.com

Dear Judge Castel;

The purposes of this letter are manifold:
1) To submit a corrected submission to this court
2) To show that my late corrected submission was in large part due to the misbehavior of the government.
3) To bring to the attention of the court these abusive procedural issues
4) To bring to the attention of the court my rebuffed attempt to open a communication channel with AUSA Greenwood.
5) To make a renewed request for ECF access privilege as a remedy to procedural abuse by the government.

## Corrected submission.

Attached is my corrected sworn submission, a "second corrected memorandum of law and declaration of facts in support of motion to vacate under Rule 60(b)"

A paper copy is herewith being submitted to the court.

Please docket this letter along with the corrected briefing papers.

There are no intended changes in the substantive issues raised in the second briefing.

Those issues are:
1) A motion request for the court to vacate a nullified original judgment in this case
2) A motion request to set aside the nullified amended lien predicated on the original judgment
3) Conduct discovery to resolve the issues of who knew what when and to demonstrate the government's coverup of the facts to the court

## Procedural issues

I have a panel of legal professionals who volunteer to vet and review my submissions. They are not paid and I can not rush them to donate their professional time and resources in support of my case.  Given that as of today, October 24, 2017 the government has not revised its rejected reply admission, and in light of the evidence that the government has no intention of revising its reply in compliance with the court clerk's notification on the docket, I submit this corrected and

finalized the second memorandum of law and sworn declaration of facts to assist the court in deciding my original motion docketed at #114. This document should be docketed as my response. This response entirely replaces the first rushed and ragged submitted on October 18 in response to the court's deadline.

The revisions are all correction of minor typing errors [1] that are entirely my fault and my responsibility to correct in a timely fashion. Further inadvertent errors were corrected in this second corrected submission. This will be the final correction, as it has been carefully vetted and edited by my colleagues and legal supporters.

1. I am the defendant in this case, not the petitioner
2. The government lawyer GREENWOOD was notified to resubmit on October 2. See Exhibit 2.
3. The paper mail to KARRON was postmarked October 2
4. The paper mail to KARRON was misaddressed despite a change of address form filed and on the docket as Exhibit 3
5. A completed ECF permission motion is shown in Exhibit 4 and was docketed with the court. No response has been received by KARRON
6. An email to GREENWOOD was ignored asking for her stipulation to agree to my ECF privileges not granted by the court.
7. The government had no intention of revising its unsworn unsigned letter in compliance with the court's notification on the docket because it mailed a copy to KARRON on the same day.
8. The mail to Karron was delayed until the last moment because of the misaddressing.
9. This caused KARRON to have to rush an unedited and ragged copy to make the court deadline.
10. KARRON had every reason to believe the government would comply with the court request to revise and waited until the last minute to respond to that mistaken belief.
11. It is now reasonable to believe that the government not only had no intention of revising its unsworn misstyled response but also intentionally sent a paper copy knowing it would not arrive in time if at all.
12. As such the government's response procedurally defaults, and on close reading, does not address any of the substantive issues of fact or law raised in KARRON's originating papers.
13. KARRON will stipulate to accept this document as the government's answer but brings to the attention of the court that none of the issues of fact and law raised by KARRON were properly addressed in GREENWOODS discussion

---

[1] typography by a typographer is entirely obsolete, so therefore typographical errors similarly are an anachronism. A **typographical error** (often shortened to **typo**), also called **misprint**, is a mistake made in the typing process (such as a spelling mistake)[2] of printed material. Historically, this referred to mistakes in manual type-setting (typography). The term includes errors due to mechanical failure or slips of the hand or finger,[3] but excludes errors of ignorance, such as spelling errors, or the flip-flopping of words such as "than" and "then". Before the arrival of printing, the "copyist's mistake" or "scribal error" was the equivalent for manuscripts. Most typos involve simple duplication, omission, transposition, or substitution of a small number of characters.

14. The discussion makes material misrepresentation of facts, while not relevant to KARRON's motion, never the less now need to be addressed.

Errata

- Reference to the year 2015 should be 2016
- Supplemented the use of the word elision[2] as too obscure for many readers.
- Reduce some of the inflammatory and ragged languages by KARRON

Signed

Daniel B. KARRON
      Defendant *Pro Se*
      e-Mail: drdbkarron@gmail.com
      voice: (516) 515 1474
      Fax: +1 516 234 7758
      Care of Aldine Publications, LLC
      1636 Third Avenue Suite 300,
      Dated Wednesday, October 25, 2017
      New York, New York 10128

---

[2] elision noun: **elision**; plural noun: **elisions**
1. the omission of a sound or syllable when speaking (as in *I'm, let's, e ' en* ).
   - an omission of a passage in a book, speech, or film. "the movie's elisions and distortions have been carefully thought out"
   - the process of joining together or merging things, especially abstract ideas. "unease at the elision of so many vital questions"
   - An efficiency in the print industry. Leaving out one or more unessential characters, minimizing the series of characters needed for understanding. An example is printing '1997-8' instead of '1997-1998.'  (Blacks Law Dictionary, online)
   Origin late 16th century: from late Latin *elision-*, from Latin *elidere* 'crush out' (see elide).

Exhibits

# Exhibit

# 1

*Docket extract as of October 17, 2017, at just before midnight*

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/17/2017 23:57:57 | | | |
| **PACER Login:** | DBKarronPhD:4825308:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:07-cr-00541-PKC |
| **Billable Pages:** | 21 | **Cost:** | 2.10 |

| Date Filed | # | Docket Text |
|---|---|---|
| 10/02/2017 | | NOTICE TO ATTORNEY TO RE-FILE DOCUMENT - EVENT TYPE ERROR as to Daniel B. Karron: Notice to Attorney Jessica Greenwood to RE-FILE Document 129 Memorandum of Law in Opposition. Use the event type Letter found under the event list Other Documents. (ka) (Entered: 10/02/2017) |
| 09/29/2017 | 129 | FILING ERROR - WRONG EVENT TYPE SELECTED FROM MENU - MEMORANDUM OF LAW in Opposition by USA as to Daniel B. Karron re: 114 MOTION to Vacate. filed by Daniel B. Karron . (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Greenwood, Jessica) Modified on 10/2/2017 (ka). (Entered: 09/29/2017) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/18/2017 13:13:21 | | | |
| **PACER Login:** | DBKarronPhD:4825308:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:07-cr-00541-PKC |
| **Billable Pages:** | 21 | **Cost:** | 2.10 |

# Exhibit

# 2

Mailing Wrapper showing postmark and wrong address



*Postmark Detail*



# Exhibit

# 3

*Docket Entry showing properly filed change of address with address visible on docket*

| 06/19/2017 | 123 | NOTICE of Change of Address of Pro Se Defendant, filed by (07-Cr-541-01) Daniel B. Karron. Dated: June 13, 2017. New Address: Care of: Aldine Publications, LLC, 1636 Third Avenue, Suite 300, New York, New York, 10128. Voice: (516) 655-1474. Fax: +1-516-234-7768. (bw) (Entered: 06/20/2017) |

# Exhibit

# 4

*Consent for ECF, Completion of ECF training,*

http://ia802501.us.archive.org/13/items/gov.uscourts.nysd.307667/gov.uscourts.nysd.307667.125
.0.pdf

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-V.-

DANIEL B. KARRON
Defendant

07-cr-00541 (PKC) and various
CONSENT TO
ELECTRONIC SERVICE

### CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below in Exhibit 1.

I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account; See Exhibit 1.

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

Exhibit 1 shows all of my Criminal and Civil cases filed in the Southern District of New York:

Exhibit 2 evidences my completion of the ECF intro class and a copy of the diploma earned, establishing myself as a diplomate in ECF.

This consent will apply to all cases that I have filed in this court, listing all of my pending and terminated cases.

# Exhibit

# 5



# UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AWARDED TO

## DB KARRON

For Completing CM/ECF POC and Introduction Class

Awarded this 13TH day of June, 2017

Presenter Name and Title

# Exhibit

# 6

 Gmail                                    Dr DB Karron <dbkarron@gmail.com>

## USA v KARRON 07-cr-00541
1 message

Dr DB Karron (PhD) <drdbkarron@gmail.com>                      Fri, Sep 1, 2017 at 8:50 PM
Reply-To: drdbkarron@gmail.com
To: Jessica.Greenwood@usdoj.gov

Dear Ms. Greenwood;

I see you have notified the court of your appearance and I found the courts
briefing schedule. Links below.

May I assume you have no objections to my application for ECF access to the case?

Can we make a stipulation to that effect and I can apply to the court again, this time with your consent?

My application to the court has not been responded to.
As a pro se defendant and non-attorney, I need an order from the court to gain online pro se access to the ECF system.

My application is docketed here
http://ia802501.us.archive.org/13/items/gov.uscourts.nysd.307667/gov.uscourts.nysd.307667.124.0.pdf

I am available by phone or email most days and nights.
E-mail is the best way to find me and I do appreciate courtesy copies emailed directly to me at drdbkarron@gmail.com.

Note I keep a separate email as dbkarron@gmail.com (without the dr prefix) as my main email, and
drdbkarron@gmail.com for professional and legal matters. You are welcome to use both but at least use
drdbkarron@gmail.com if you are going to correspond with me regarding this case.

Sincerely,

Dr. Karron


CASE STATUS
Notice of Appearance
http://ia902501.us.archive.org/13/items/gov.uscourts.nysd.307667/gov.uscourts.nysd.307667.127.0.pdf

Endorsed Order of Court
http://ia902501.us.archive.org/13/items/gov.uscourts.nysd.307667/gov.uscourts.nysd.307667.128.0.pdf

The (free) docket is here:
http://ia802501.us.archive.org/13/items/gov.uscourts.nysd.307667/gov.uscourts.nysd.307667.docket.html

Docket Header excerpt (showing Rubinstein and Kwok)
https://ecf.nysd.uscourts.gov/cgi-bin/DktRpt.pl?688459900786577-L_1_0-1

"D B Karron, Ph.D. a/k/a Dr. K" <drdbkarron@gmail.com>
<karron@casi.net> skype: drdbkarron
+1 (516) 515-1474 (will find me)
+1 (917) 674-0828 (voice and cell texting, SMS)